IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LILLY V. EVANS,<br><br>Plaintiff,<br><br>v.<br><br>UNISON AGREEMENT CORP., et al.,<br><br>Defendants. | Civil Action No: 1:26-cv-00999-RC |

**DEFENDANTS' MOTION TO STAY**

Defendants Unison Agreement Corp. ("UAC"), Unison Investment Management, LLC ("UIM"), Real Estate Equity Exchange, Inc. ("REEE"), Odin New Horizon Real Estate Fund, L.P. ("Odin"), Odin New Horizon General Partner, LLC ("Odin General Partner"), Ismael Casas, Jr. ("Casas") (collectively, the "Unison Defendants" or "Unison"), and Vantage Point Title, Inc. ("Vantage Point") (together with the Unison Defendants, "Defendants"), respectfully move this Court to stay this action until the conclusion of *National Association of Consumer Advocates, Inc. v. Unison Agreement Corp.*, *et al.*, No. 2026-CAB-000955 (D.C. Super. Ct. Feb. 11, 2026), which is currently pending in the Superior Court for the District of Columbia; includes virtually all the same counsel as Plaintiff's and Unison's attorneys here; asserts claims on behalf of all D.C. homeowners, including Plaintiff here; and is set to resolve the exact same legal issue—namely, whether Unison's equity sharing agreements constitute mortgage loans under D.C. law. As explained in further detail in Defendants' Memorandum of Points and Authorities, the Court should stay this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), and/or this Court's inherent authority to manage its docket to ensure judicial efficiency and conserve scarce judicial and party resources.

Pursuant to Local Civil Rule 7(m), counsel for Defendants met and conferred with counsel for Plaintiff, who opposes this Motion. Pursuant to Local Civil Rule 7(f), Defendants respectfully request an oral hearing on this Motion at a time and place to be set by the Court.

Dated: April 1, 2026

Respectfully submitted,

/s/ Raymond P. Tolentino
Michelle L. Rogers (D.C. Bar #498625)
Raymond P. Tolentino (D.C. Bar #1028781)
Matt K. Nguyen (D.C. Bar #1736777)
COOLEY LLP

1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Phone: 202-842-7800
Fax: 202-842-7899
Email: mrogers@cooley.com
Email: rtolentino@cooley.com
Email: mnguyen@cooley.com

*Counsel for Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Odin New Horizon Real Estate Fund, L.P., Odin New Horizon General Partner LLC, and Ismael Casas Jr.*

*<u>/s/ Benjamin Klubes</u>*

Benjamin Klubes (D.C. Bar #428852)
Klubes Law Group
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: 202-753-5054
Email: bklubes@klubeslaw.com

*Counsel for Defendant Vantage Point Title, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LILLY V. EVANS,<br><br>Plaintiff,<br><br>v.<br><br>UNISON AGREEMENT CORP., et al.,<br><br>Defendants. | Civil Action No: 1:26-cv-00999-RC |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 3

I. THE *EVANS* ACTION........................................................................................... 3

II. THE *NACA* ACTION ........................................................................................... 4

ARGUMENT............................................................................................................ 4

I. THE COURT SHOULD STAY THIS ACTION UNDER *COLORADO RIVER* UNTIL RESOLUTION OF THE PARALLEL STATE PROCEEDING ADDRESSING THE SAME LEGAL ISSUE. ............................................................. 4

A. *Evans* and *NACA* Are Parallel Proceedings. ................................................. 5

B. The *Colorado River* Factors Are Exceptional Here and Favor a Stay.................. 8

II. THIS COURT SHOULD ALSO STAY THIS ACTION PURSUANT TO *THIBODAUX* ABSTENTION. ....................................................................... 12

III. THE COURT SHOULD EXERCISE ITS INHERENT, DISCRETIONARY AUTHORITY TO STAY THIS ACTION. ............................................................ 14

CONCLUSION........................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*,
797 F.2d 1041 (D.C. Cir. 1986) ........................................................ 10

*Atkinson v. Grindstone Cap., LLC*,
12 F. Supp. 3d 156 (D.D.C. 2014) ........................................................ 12, 13

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1, 8 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) ........................................................ 15-16

*Clark v. Lacy*,
376 F.3d 682 (7th Cir. 2004) ........................................................ 6, 7

* *Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ........................................................ *passim*

*Dano Res. Recovery, Inc. v. District of Columbia*,
1992 WL 165977 (D.D.C. June 30, 1992) ........................................................ 13, 14

*DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*,
953 F.3d 469 (7th Cir. 2020) ........................................................ 5

*Donovan v. City of Dallas*,
377 U.S. 408 (1964) ........................................................ 11

* *Edge Inv., LLC v. D.C.*,
927 F.3d 549 (D.C. Cir. 2019) ........................................................ 5, 9

* *Fonville v. District of Columbia*,
766 F. Supp. 2d 171 (D.D.C. 2011) ........................................................ 14, 15, 16

*Fru-Con Const. Corp. v. Controlled Air, Inc.*,
574 F.3d 527 (8th Cir. 2009) ........................................................ 5

*Hoai v. Sun Ref. & Mktg. Co.*,
866 F.2d 1515 (D.C. Cir. 1989) ........................................................ 10

*Karol v. Old Second Nat'l Bank*,
2020 WL 6343088 (N.D. Ill. Oct. 29, 2020) ........................................................ 14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........................................................ 15

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

* *Louisiana Power & Light Co. v. City of Thibodaux*,
360 U.S. 25 (1959)........................................................................................ *passim*

*M. A. S., Inc. v. Van Curler Broad. Corp.*,
357 F. Supp. 686 (D.D.C. 1973)..........................................................................13

*Md. Cas. Ins. Co. v. Newpark Towers Assocs.*,
1990 WL 183603 (D.D.C. Nov. 5, 1990) ...............................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...........................................................................................5, 8, 9

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)..................................................................................................2

*Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*,
253 F. Supp. 3d 210 (D.D.C. 2017)..........................................................................6

*Sheehan v. Koonz*,
102 F. Supp. 2d 1 (D.D.C. 1999).............................................................................9

*Song fi, Inc. v. Google Inc.*,
72 F. Supp. 3d 53 (D.D.C. 2014)............................................................................10

*US Dominion, Inc. v. Herring Networks, Inc.*,
639 F. Supp. 3d 143 (D.D.C. 2022)..........................................................................5

*Windward Bora, LLC v. Bank of N.Y. Mellon as Tr. for Certificateholders of Cwalt, Inc., Alt. Loan Tr. 2007-5CB, Mortg. Pass-Through Certificates, Series 2007-5CB*,
2020 WL 7042761 (E.D.N.Y. Nov. 30, 2020)........................................................14

**D.C. Code**

§ 26-1101(12)..............................................................................................................7
§ 28-3901 ...................................................................................................................4
§ 28-3905(k)(2)..........................................................................................................10
§ 42-815.01 ...............................................................................................................13
§ 42-1101 ..................................................................................................................13

## INTRODUCTION

Unison was founded on a simple premise: homeownership should be more accessible for all. Through equity-sharing agreements ("ESAs"), Unison offers homeowners, like Plaintiff Lilly V. Evans ("Plaintiff" or "Evans"), a unique source of financial access and flexibility—offering upfront capital with no monthly payments, no interest accrual, and virtually no likelihood of foreclosure in return for the option to buy a partial interest in their property in the future for a set price. These homebuyers and homeowners then take this capital infusion to satisfy the down payment for their mortgage, which is approved and provided by an entirely separate company, or to pay for other expenses. If Unison later pays the homeowner to exercise its option, Unison then shares in any future appreciation and depreciation of the property, with no guarantee of returns for Unison.

Plaintiffs in two parallel cases challenge the legality of Unison's ESAs in the District of Columbia. In this action, which was originally filed in D.C. Superior Court, Plaintiff entered into "a private mortgage" with a third-party company to buy her house in 2012. Dkt. No. 1-1 ¶ 58 (consisting of Plaintiff's Complaint, "Evans Compl.," and four exhibits attached to the Complaint). Six years later, in 2018, Plaintiff signed an ESA with Unison. Seven years after that, in 2026, she now alleges her ESA with Unison was secretly a mortgage loan under D.C. law, allegedly in violation of the D.C. Consumer Protection Procedures Act ("CPPA") and other laws. *Id.* ¶¶ 142-170. In another case filed in D.C. Superior Court (within a week of the *Evans* case), plaintiff National Association of Consumer Advocates, Inc. ("NACA") asserts the same CPPA claims against Unison, arguing that Unison's ESAs are unlawful mortgage loans under D.C. law. NACA—which is represented by the same counsel as Plaintiff in this case—purports to represent "the interests of District consumers," including Plaintiff, who signed ESAs with Unison.

Declaration of Raymond P. Tolentino ("Tolentino Decl."), Ex. 1, Complaint, *NACA v. Unison Agreement Corp., et al.*, No. 2026-CAB-000955 (D.C. Super. Ct.) ("NACA Compl."), ¶ 175. Both cases raise the same operative legal issue: whether Unison's ESAs constitute mortgage loans under D.C. law.

This Court should stay this matter pending final resolution of *NACA* for at least three reasons.[1] ***First***, exceptional circumstances warrant a stay under the factors set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The D.C. Superior Court was the first court to exercise jurisdiction over Plaintiff's property, D.C. law controls this case, and the parallel litigation in D.C. courts—with NACA purporting to sue "on behalf of the interests of District consumers" like Plaintiff and with Plaintiff's own counsel representing NACA—is more than adequate to protect Plaintiff's interests here. ***Second***, a stay is separately proper under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), as both pending actions involve the same complex issue of D.C. law that bears on local policy issues of substantial importance beyond Plaintiff's case. ***Third***, beyond *Colorado River* and *Thibodaux*, this Court has inherent and discretionary authority to stay this case to advance sound judicial administration, conserve judicial and party resources, and efficiently resolve a central issue in both actions.

[1] Defendants seek a stay and not dismissal, as federal courts are "permitted [to] apply[] abstention principles in damages actions to enter a stay, but . . . [are] not permitted . . . to dismiss the action altogether. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). A stay would preserve this Court's jurisdiction while allowing the D.C. Superior Court to authoritatively decide the operative question of D.C. law that will resolve both cases.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The *Evans* Action

On February 5, 2026, Plaintiff filed this action in D.C. Superior Court, naming Unison and Vantage Point as defendants. Evans Compl. ¶¶ 9-14. On March 23, 2026, Unison removed this action based on this Court's diversity, federal question, and supplemental jurisdiction. Dkt. No. 1.

Plaintiff alleges that she has owned property at 5335 Jay Street NE, Washington, D.C. (the "Property"), since 2012. Evans Compl. ¶ 57. Plaintiff financed this purchase through a private mortgage with a third-party mortgage company, Homebridge Financial Services, Inc., and later obtained a Home Equity Line of Credit with SunTrust Bank in August 2017. *Id.* ¶¶ 58-59. Plaintiff alleges that, between 2012 and 2018, she "accumulated thousands of dollars of credit card and other debt." *Id.* ¶ 60. Plaintiff alleges that, in October 2018, she entered into an ESA with Unison, whereby Unison gave her $56,875 in return for the option to buy a partial interest in the Property in the future for a set price. *Id.* ¶ 152; *see* Evans Compl., Ex. 2 § 1(a). Unison has never exercised its option to purchase partial ownership in the Property. Despite this fact, nearly seven years after Plaintiff signed the ESA, she now claims that the ESA was a mortgage loan, Evans Compl. ¶ 202, even though the ESA has no attributes of a mortgage and functions as an entirely distinct financing instrument altogether. *See e.g.*, Evans Compl., Ex. 2 §§ 1(c), 6.

Plaintiff asserts fourteen causes of action, including a CPPA violation, and multiple claims that rely on the alleged violations of federal laws like the Alternative Mortgage Transaction Parity Act and the Truth in Lending Act. Evans Compl. ¶¶ 204-64, 269-73, 281-82. These claims predominantly arise from her allegation that the ESA she signed with Unison is an unlicensed mortgage loan. *Id.* ¶¶ 204-16. Plaintiff seeks declaratory relief, injunctive relief, monetary damages, disgorgement, quiet title, attorneys' fees, and all other and further relief. *Id.* at 58.

## II. The *NACA* Action

On February 11, 2026, NACA, a D.C.-based organization, filed its complaint against Unison in D.C. Superior Court, alleging that Unison's ESAs are mortgage loans under D.C. law that allegedly violate the CPPA. NACA Compl. ¶¶ 19, 168-96. NACA's action remains in D.C. Superior Court. NACA is represented by many of the same attorneys as Plaintiff here, including several lawyers from the AARP Foundation. *Compare* Evans Compl. at 59, *with* NACA Compl. at 41. NACA brings a cause of action under the CPPA, D.C. Code § 28-3901, *et seq.*, purportedly "on behalf of the interests of District consumers who entered into Unison [ESAs]." NACA Compl. ¶ 175. Aside from redactions, the four exhibits in NACA's complaint are identical to the four exhibits in Plaintiff's complaint here. *Compare* NACA Compl., Exs. A-D, *with* Evans Compl., Exs. 1-4. NACA seeks declaratory and injunctive relief that all of Unison's ESAs—which include Plaintiff's ESA with Unison—"are void, unenforceable, and have no legal force or effect." NACA Compl. ¶ 198(e).

# ARGUMENT

## I. The Court Should Stay this Action under *Colorado River* until Resolution of the Parallel State Proceeding Addressing the Same Legal Issue.

In *Colorado River*, the Supreme Court recognized "exceptional circumstances" where considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," justify a federal court staying or dismissing an action in favor of a concurrent state court proceeding. 424 U.S. at 813, 817 (cleaned up). The Court articulated a "number of factors [that] clearly counsel against concurrent federal proceedings," including "the desirability of avoiding piecemeal litigation," which "court first assumed jurisdiction over property," "the inconvenience of the federal forum," "the order in which jurisdiction was obtained by the concurrent forums," *id.* at 818–19, and "the presence in the suit

of extensive rights governed by state law," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (describing *Colorado River*). "No one factor is necessarily determinative," *Colorado River*, 424 U.S. at 818, and the decision to stay "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case," *Moses*, 460 U.S. at 16. "[T]he relevant *Colorado River* factors, alone or in combination, [must] provide the 'exceptional circumstances' required" for a stay. *Edge Inv., LLC v. D.C.*, 927 F.3d 549, 554 (D.C. Cir. 2019). For the reasons described below, the factors here, alone and in combination, represent exceptional circumstances that counsel strongly in favor of a stay pending the resolution of *NACA*.

### A. *Evans* and *NACA* Are Parallel Proceedings.

To stay a case under *Colorado River*, the pending state and federal actions must be parallel. But the two actions need not be identical: when the parties, facts, and issues are "substantially similar," then those actions are "parallel" for purposes of *Colorado River* abstention. *See, e.g.*, *Md. Cas. Ins. Co. v. Newpark Towers Assocs.*, 1990 WL 183603, at *5 (D.D.C. Nov. 5, 1990) (applying *Colorado River* factors in a case where "the parallel state and federal actions [were] substantially similar and that the claims brought in federal court [could] be brought in state court"); *accord Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009) ("The prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court."); *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020) (similar). Courts find "substantial similarity . . . when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court," *Fru-Con*, 574 F.3d at 535, such that "upon resolution of the state proceeding, it 'will have nothing further to do in resolving any substantive part of the case,'" *US Dominion, Inc. v. Herring Networks, Inc.*, 639 F. Supp. 3d 143, 154 (D.D.C. 2022) (quoting *Moses*, 460 U.S. at 28).

Here, the *Evans* and *NACA* actions are parallel because the parties, facts, and issues are substantially the same, and the resolution of *NACA* will necessarily dispose of Plaintiff's claims here. Starting with the parties, Plaintiff brings claims against Defendants arising from Plaintiff's ESA with Unison. Evans Compl. ¶¶ 1-4. In the D.C. proceeding, NACA purports to bring suit on "behalf of the interests of District consumers who entered into [ESAs]" with Unison, which includes Evans. NACA Compl. ¶ 175. The plaintiffs in both cases name Unison as defendants and allege that "a unity of interest and ownership" exists between these parties. Evans Compl. ¶¶ 9-11, 16; NACA Compl. ¶ 23-26. The plaintiffs in both cases also share the same attorneys. Evans Compl. at 59; NACA Compl. at 41.

Although Evans names Odin, Odin New Horizon, Vantage Point, and Casas as additional Defendants, Evans Compl. ¶¶ 12-15, "[t]he addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) ("[P]arties [must] be *substantially* the same—not completely identical."); *see Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*, 253 F. Supp. 3d 210, 219 (D.D.C. 2017) ("[T]he mere presence of additional parties or issues in one of the cases will [not] necessarily preclude application of *Colorado River* abstention." (cleaned up)). Plaintiff named these additional defendants as alleged agents of Unison, based on the same underlying conduct.[2] And Evans alleges "a unity of interest and ownership and management between and among UAC, UIM, REEE, Odin and Odin General Partner . . . such that there is no individuality or separateness between them and they are the mere instrumentalities, agents, conduits, or adjuncts of one another." Evans Compl. ¶

[2] Evans Compl. ¶ 78 ("[A] courier was sent by Vantage Point, who had been hired by Unison to act as its agent to carry out its transaction with Ms. Evans."); *id.* ¶ 96 ("The Transaction Documents were later countersigned on behalf of UAC—out of Ms. Evans's presence—by Ismael Casas, Jr., who is designated as a Vice President for Unison."); *id.* ¶ 100 ("[T]he Unison Deed of Trust was assigned to Odin . . . .").

16. Given these considerations, "it is clear that the addition of . . . defendants has little impact on the overall similarity of the disputes," such that "[t]heir inclusion . . . does not alter the case's central issue." *Clark*, 376 F.3d at 686.

There is also significant overlap in the factual allegations. Plaintiffs in both cases allege that Unison signed ESAs with D.C. homeowners that allegedly violate the CPPA and other laws. The plaintiffs in both cases challenge Unison's ESAs and the same Unison transaction documents. Evans Compl. ¶¶ 28, 104-141; NACA Compl. ¶¶ 4, 49-59. Indeed, Plaintiffs in both cases cite Evans's ESA with Unison as their operative exhibits. *Compare* Evans Compl., Exs. 1-4, *with* NACA Compl. Exs. A-D. And Plaintiffs in both cases seek substantially the same declaratory, injunctive, and monetary relief. Plaintiff here seeks an order "that any and all agreements between Plaintiff and Unison are void and unenforceable," for "[d]eclaratory and injunctive relief," and "[m]onetary damages." Evans Compl. ¶ 216; *id.* at 58. NACA similarly seeks an order "[d]eclar[ing] that Unison's HomeBuyer and HomeOwner products are void, unenforceable, and have no legal force or effect," "enjoin[ing] Unison from enforcing or selling its HomeBuyer and HomeOwner Agreement products," and "[d]isgorg[ing] Unison of all profits and money unlawfully obtained from consumers." *NACA* Compl. ¶ 198.

Finally, on the issues, Plaintiffs in both cases raise the same dispositive legal issue: whether Unison's ESAs with Plaintiff and other D.C. homeowners constitute mortgage loans under D.C. law and whether Unison's ESAs violate the CPPA and other laws. Plaintiffs in both cases allege that Unison's ESAs are proscribed by D.C. Code § 26-1101(12), which defines a "[m]ortgage loan" as "any loan primarily for personal, family, or household use that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling." Evans Compl. ¶ 147; NACA Compl. ¶ 179. Plaintiffs in both cases contend that ESAs are mortgages, and that Unison

violated D.C. law by acting as an unlicensed mortgage lender. Evans Compl. ¶¶ 171-91; NACA Compl. ¶¶ 75-89. And Plaintiffs in both cases allege other fraud-based claims based on their theory that ESAs are mortgages—including fraudulent misrepresentations, Evans Compl. ¶ 209; NACA Compl. ¶ 167; unconscionability, Evans Compl. ¶¶ 304-09; NACA Compl. ¶ 176; and usury, Evans Compl. ¶¶ 247-55; NACA Compl. ¶ 176.

Even though Plaintiff here raises some causes of action beyond the CPPA claim in *NACA*, each of her claims still turns on her contention that ESAs are mortgages as a matter of law. For example, Plaintiff's unconscionability claim alleges that Unison "failed to provide accurate [mortgage] disclosures related to the transaction as required by law." Evans Compl. ¶ 305(e). But if Unison's ESA with Plaintiff is not a mortgage, then no disclosures are required—thereby defeating that claim. Evans's other claims rise and fall based on that same legal theory.[3]

Given the "substantial similarity" in parties, facts, and issues in both actions, there is no question that this case and NACA's action in D.C. Superior Court qualify as parallel proceedings.

**B. The *Colorado River* Factors Are Exceptional Here and Favor a Stay.**

Here, four *Colorado River* factors, alone and in combination, provide the "exceptional circumstances" that strongly favor a stay: (1) the desirability of avoiding piecemeal litigation that is abnormally excessive or deleterious, (2) which court first assumed jurisdiction over property, (3) whether state or federal law controls, and (4) the adequacy of the state court in protecting the parties' rights.[4]

---

[3] *See, e.g.*, Evans Compl. ¶ 209(a) (count one); *id.* ¶ 219 (count two); *id.* ¶ 228(a) (count three); *id.* ¶ 240 (count four); *id.* ¶ 249 (count five); *id.* ¶ 258 (count six); *id.* ¶ 267 (count seven); *id.* ¶ 281 (count eight); *id.* ¶ 287(a) (count nine); *id.* ¶ 295(a) (count ten); *id.* ¶ 305(e) (count eleven); *id.* ¶ 312(b) (count twelve); *id.* ¶ 319(a) (count thirteen); *id.* ¶ 335 (count fourteen).

[4] The two remaining *Colorado River* factors, the inconvenience of the federal forum and the order of jurisdiction in the concurrent forums, are neutral. In this case, both courts are geographically close to one another and equally convenient. While *Evans* was filed six days before *NACA*, courts do not apply the order-of-jurisdiction factor mechanically. *See Moses*, 460 U.S. at 21. Rather, the

***First***, the desirability of avoiding piecemeal litigation is an "exceptional" consideration that favors a stay here. This factor favors abstention where, as here, "the circumstances enveloping those cases will lead to piecemeal litigation that is abnormally excessive or deleterious." *Edge*, 927 F.3d at 556 (cleaned up). Here, allowing both cases to proceed, when both challenge the same conduct and seek the same relief, will result in abnormally excessive and deleterious piecemeal litigation. It risks squandering judicial and party resources while opening the floodgates to individual, piecemeal suits challenging each ESA between Unison and D.C. homeowners. By stark contrast, the *NACA* action challenges all ESAs and would have D.C. courts resolve the operative legal question of D.C. law—thereby rendering piecemeal litigation wholly unnecessary. *See Sheehan v. Koonz*, 102 F. Supp. 2d 1, 4–5 (D.D.C. 1999) (determining that abstention was warranted under *Colorado River* as a similar state proceeding was "inextricably intertwined and inseparable from the [federal] proceeding" and "indubitably more comprehensive" in scope).

The "most important factor" that the Court considered in *Colorado River* was the risk of piecemeal litigation, given the "clear" policy of a statute at issue in the case to "avoid[] piecemeal adjudication of water rights in a river system." *Moses*, 460 U.S. at 16 (quoting *Colorado River*, 424 U.S. at 819). As the D.C. Circuit has recognized, that consideration was "exceptional" in *Colorado River* because the relevant statute "explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy favoring resolution of those

factor should be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* Priority, therefore, should "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* The Unison Defendants and Plaintiffs in both actions sought, and Defendants received, a 60-day extension on Unison's response deadline in D.C. Superior Court until May 11, 2026. Dkt. No. 1-4. At this point, neither case is more advanced than the other.

rights in a single, comprehensive forum." *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989).

The same principles apply equally here. Evans and NACA bring similar claims against Unison's ESAs under the CPPA, which expresses a strong legislative policy of favoring resolution of rights within D.C. courts. The CPPA provides that "[a]ny claim" under the statute "shall be brought in the Superior Court of the District of Columbia." D.C. Code § 28-3905(k)(2).[5] Any decision by this Court on the central legal question of whether Unison's ESAs constitute mortgage loans could impact (as persuasive authority) the D.C. Superior Court's decision in *NACA*, which would be contrary to CPPA's strong policy favoring D.C. courts addressing this issue in the first instance. As such, this factor not only weighs in favor of a stay, but it is also an exceptional circumstance that makes abstention particularly appropriate here.

***Second***, a stay is appropriate here because the D.C. Superior Court first had jurisdiction over the Property when Evans initially filed her complaint in that court, and both cases challenge Unison's ESA pertaining to the Property. *Colorado River*, 424 U.S. at 818 (providing as a factor that the "court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"); Evans Compl. ¶ 57; NACA Compl. ¶ 83 (challenging Unison's ESAs related to D.C. homeowners' properties, including the Property); NACA Compl. ¶ 198(c) (seeking an order to "void" all ESAs filed with the D.C. Recorder's Office, including Plaintiff's). In fact, this factor is especially compelling here, given that the parallel *NACA* action relates to Plaintiff's

[5] While the statute expresses a strong policy of favoring resolution of rights within D.C. courts, it "does not deprive federal courts of jurisdiction over CPPA claims," and parties like Defendants retain their statutory right to remove actions to a federal court with diversity, federal question, and/or supplemental jurisdiction. *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64 (D.D.C. 2014); *see also District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1045–46 (D.C. Cir. 1986) (finding that another D.C. law, which stated that suits under it "shall be brought" in D.C. Superior Court, did not "defeat diversity jurisdiction").

Property and cites Plaintiff's ESA with Unison as the sole exhibits to their complaint. *Id.* ¶ 49 n.19; *compare* Exs. A-D, *id.*, *with* Evans Compl., Exs. 1-4 (appearing to attach Plaintiff's ESA applicable to the Property as the NACA Complaint exhibits); *see also Colorado River*, 424 U.S. at 818 (stating that which "court first assum[ed] jurisdiction over property" is an "example" of "exceptional circumstances" where abstention is appropriate); *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("[I]n cases where a court has custody of property . . . . this Court has said that the state or federal court having custody of such property has exclusive jurisdiction to proceed.").[6]

***Third***, as discussed above, there is no question that D.C. law controls whether Unison's ESAs constitute mortgage loans under D.C. law. Any ruling by this Court on the operative legal issue would have limited precedential value since the issue centers on D.C. law, for which D.C. courts bear primary responsibility for interpreting. Given this, allowing both actions to proceed in parallel magnifies the risk of inconsistent and even contrary judgments between this Court and the D.C. courts about Unison's ESAs. For example, if this Court found in favor of Evans and invalidated her ESA, but the Superior Court in *NACA* finds in favor of the defendants and upholds all ESAs in D.C. (including Evans's ESA), the resulting inconsistency and confusion in the title records of D.C. properties would be deleterious—i.e., the D.C. Recorder's Office would need to choose whether to void the Property's deed in light of contradictory rulings. A split in authority would also incentivize forum shopping by D.C. homeowners. *See Colorado River*, 424 U.S. at 819 (noting that the policy of avoiding piecemeal adjudication is due in part to the concern of "avoiding the generation of additional litigation through permitting inconsistent dispositions of property").

[6] While Unison properly removed *Evans* to this Court, removal does not change the fact that the D.C. Superior Court first had jurisdiction over the Property and retains that jurisdiction through *NACA*, as it involves all D.C. properties with Unison ESAs, including Evans's.

***Fourth***, the D.C. Superior Court proceedings are also more than adequate to protect the parties' rights. Plaintiff's own counsel brought the parallel *NACA* action in D.C. Superior Court, challenging all of Unison's ESAs with D.C. homeowners, including Plaintiff in this case. This factor too is exceptional because, even though this Court had concurrent jurisdiction and Unison was within its prerogative to remove the case to this Court, Plaintiff filed her complaint against Defendants in D.C. Superior Court—meaning she had no doubt that the D.C. Superior Court would adequately protect her rights.

In sum, the *Colorado River* factors, alone and in combination, represent the "exceptional circumstances" that warrant an abstention here.

## II. This Court Should Also Stay this Action Pursuant to *Thibodaux* Abstention.

In addition to abstaining under *Colorado River*, this Court should also exercise its distinct authority pursuant to *Thibodaux* to stay this action until the resolution of *NACA*. Under *Thibodaux*, "abstention is appropriate[]" in federal diversity cases that implicate "a difficult question of state law that bears on policy problems of substantial public import, and its importance goes beyond the result in the instant case." *Atkinson v. Grindstone Cap., LLC*, 12 F. Supp. 3d 156, 160–61 (D.D.C. 2014) (citing *Thibodaux*). Federal courts may stay cases pending the decision of an "[i]nformed local court[]" on a state law issue of first impression, as the local court may "find meaning not discernible to the outsider." *Thibodaux*, 360 U.S. at 30.

Here, Plaintiff seeks the answer to a complex question of state law that will necessarily be decided by D.C. courts in the *NACA* action. The central legal question in both actions is whether Unison's ESAs with D.C. homeowners like Plaintiff constitute mortgage loans under D.C. law. Defendants strongly disagree that Unison's ESAs constitute mortgage loans, as no D.C. statute requires classifying ESAs as mortgage loans as a matter of law. Indeed, no D.C. court has ever decided that ESAs or similar financial products qualify as mortgage loans.

Given the dearth of D.C. precedent supporting Plaintiffs' arguments, the Superior Court is best situated to interpret D.C. law on a novel and important issue. *Id.* Staying this action and allowing D.C. courts to address this issue in the first instance would eliminate the risk that this Court and the D.C. courts arrive at contrary conclusions on the same operative issue—the "consequence of [which] . . . would be that this case would be the only case in which the [D.C.] statute is construed as we would construe it, whereas the rights of all other litigants would be thereafter governed by a decision of the [D.C. Superior Court] quite different from ours." *Id.* As noted above, any inconsistent ruling between federal and D.C. courts would likely inspire forum-shopping and needlessly burden both this Court and the D.C. courts with duplicative, piecemeal litigation. *See supra* pp. 8-10.

While "difficulty in ascertaining state law, standing alone, does not warrant abstention," *M. A. S., Inc. v. Van Curler Broad. Corp.*, 357 F. Supp. 686, 691 n.29 (D.D.C. 1973), federal courts nevertheless abstain under *Thibodaux* when the "difficult question of state law" implicates "policy problems of substantial import," *Atkinson*, 12 F. Supp. 3d at 160–61. Here, in both actions, the issue of what financial products are properly classified as mortgage loans is a matter of significant "local policy" importance to the D.C. government, Unison, and D.C. homeowners. *Dano Res. Recovery, Inc. v. District of Columbia*, 1992 WL 165977, at *2 (D.D.C. June 30, 1992) (abstaining because a "claim present[ed] a question of local policy concerning the interpretation of a government contract"). Over several decades, the D.C. government has enacted detailed statutory definitions to define whether a particular financial product qualifies as a mortgage and to distinguish between different types of mortgages, demonstrating local legislative recognition that such classifications are a matter of local policy. *See* D.C. Code §§ 42-815.01, 42-1101 (defining various types of mortgage loans with distinct legal treatment). These detailed statutory distinctions

baked into D.C. law reflect a distinctly local policy determination that different financial products warrant different regulatory treatment under D.C. consumer protection laws, regulatory compliance law, tax law, and property rights for D.C. residents. Disputes about properties, including quiet title actions like Plaintiff's and NACA's, also "primarily affect[] the District of Columbia courts" that hear these local issues, and thus "present[] . . . matter[s] of local concern." *Dano Res. Recovery*, 1992 WL 165977, at *2.

Simply put, there is no question that the resolution of the operative legal question in this action transcends the outcome of Plaintiff's case. This Court should abstain under *Thibodaux* to allow D.C. courts to resolve this local policy issue of first impression in *NACA*.

## III. The Court Should Exercise its Inherent, Discretionary Authority to Stay this Action.

While this Court has more than enough justification to stay this action pursuant to *Colorado River* and *Thibodaux*, it also retains inherent and discretionary authority to stay this action, whether or not those enumerated abstention doctrines apply here. *See, e.g.*, *Karol v. Old Second Nat'l Bank*, 2020 WL 6343088, at *6 (N.D. Ill. Oct. 29, 2020) ("[E]ven if *Colorado River* abstention were not warranted, this Court would still exercise its inherent authority to issue a stay pending the forthcoming resolution of the state appeal."); *Windward Bora, LLC v. Bank of N.Y. Mellon as Tr. for Certificateholders of Cwalt, Inc., Alt. Loan Tr. 2007-5CB, Mortg. Pass-Through Certificates, Series 2007-5CB*, 2020 WL 7042761, at *7 (E.D.N.Y. Nov. 30, 2020) (finding that even if the "*Colorado River* factors . . . do not support abstention," "a discretionary stay is appropriate" due, in part, to "interest of comity and judicial efficiency").

"[A] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 172 (D.D.C. 2011) (cleaned up). This power is "inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Many factors discussed above also counsel strongly in favor of a discretionary stay here.

Courts determine whether a discretionary stay is warranted by "weigh[ing] competing interests and maintain[ing] an even balance." *Id.* at 254-55. For example, in *Fonville*, the D.C. District Court considered a case where "a threshold—and dispositive—issue" was "whether plaintiff had a property interest in his [police] Commander position." *Fonville*, 766 F. Supp. 2d at 172. The defendant filed a motion to stay pending the resolution of two D.C. Court of Appeals cases that "squarely addressed the [same] issue." *Id.* The *Fonville* Court "balanc[ed] the competing interests," including "the plaintiff's concerns regarding delay" and the "striking similarities between the governing law [in both cases]." *Id.* at 174. The court determined that "efficiency require[d] this case to be stayed" "because resolution of pending litigation in the D.C. Court of Appeals will likely 'narrow the issues in the pending cases and assist in the determination of the questions of law involved,'" and "[t]he need to correctly resolve [the common legal question was] particularly acute in this case." *Id.* (quoting *Landis*, 299 U.S. at 253).

This Court should similarly stay this case because the balance of competing interests weighs decisively in favor of a stay. Just as in *Fonville*, both *Evans* and *NACA* involve the same dispositive and novel legal issue. Both actions contain substantially the same facts, issues, and parties, including shared counsel between the plaintiffs in both actions. Plaintiffs in both cases also appear to base their allegations on Evans's ESA. *Compare* Evans Compl., Exs. 1-4, *with* NACA Compl., Exs. A-D. And as noted previously, both cases are in the pleading stage, with neither case more advanced than the other. Resolution of *NACA* would conserve "economy of time and effort for [the courts], for counsel, and for litigants," and would surely "narrow the issues" in this case—if not resolve them altogether. *Landis*, 299 U.S. at 253-54; *cf. Attias v. CareFirst, Inc.*, 365 F.

Supp. 3d 1, 8 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) ("[T]he [U.S. District] Court [for the District of Columbia] is bound by decisions of the District of Columbia Court of Appeals—the highest court in D.C.—interpreting D.C. law."); *Fonville*, 766 F. Supp. 2d at 173 ("[D.C. court decisions] on matters of local D.C. law are entitled to a high degree of deference from the federal courts."). Absent a stay, both courts would be adjudicating largely the same case, even though the D.C. courts are best equipped to interpret D.C. law and *NACA* stands to address all D.C. properties with Unison ESAs (including Evans's Property). Given all these considerations, this Court should "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it pending resolution of independent proceedings which bear upon the case." *Fonville*, 766 F. Supp. 2d at 173 (citation omitted).

Accordingly, this Court should exercise its inherent authority to stay this case pending resolution of *NACA* in the interest of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation.

**CONCLUSION**

For the foregoing reasons, the Court should stay this action pursuant to *Colorado River*, *Thibodaux*, or its inherent and discretionary authority pending final resolution of the *NACA v. Unison*, *et al.*, action currently pending in D.C. Superior Court.

Dated: April 1, 2026

Respectfully submitted,

*/s/ Raymond P. Tolentino*

Michelle L. Rogers (D.C. Bar #498625)
Raymond P. Tolentino (D.C. Bar #1028781)
Matt K. Nguyen (D.C. Bar #1736777)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700

Washington, DC 20004
Phone: 202-842-7800
Fax: 202-842-7899
Email: mrogers@cooley.com
Email: rtolentino@cooley.com
Email: mnguyen@cooley.com

*Counsel for Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Odin New Horizon Real Estate Fund, L.P., Odin New Horizon General Partner LLC, and Ismael Casas Jr.*

*<u>/s/ Benjamin Klubes</u>*
Benjamin Klubes (D.C. Bar #428852)
Klubes Law Group
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: 202-753-5054
Email: bklubes@klubeslaw.com

*Counsel for Defendant Vantage Point Title, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Defendants' Motion to Stay was caused to be served via CM/ECF upon:

David S. Yellin (D.C. Bar #1028475)
AARP Foundation
601 E Street NW
Washington, DC 20049
dyellin@aarp.org
202-434-3389

Sébastien Monzón Rueda (D.C. Bar. #1025974)
AARP Foundation
601 E Street NW
Washington, DC 20049
202-434-2175
smonzonrueda@aarp.org

*Counsel for Plaintiff Lilly V. Evans*

Benjamin Klubes (D.C. Bar #428852)
Klubes Law Group
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: 202-753-5054
Email: bklubes@klubeslaw.com

*Counsel for Defendant Vantage Point Title, Inc.*

and by email and U.S. Mail upon:

Julie Nepveu (D.C. Bar #458305)
Louis Lopez (D.C. Bar #461662)
AARP Foundation
601 E Street NW
Washington, DC 20049
jnepveu@aarp.org
llopez@aarp.org
202-434-3389

Bryony Coiner (D.C. Bar #187309)
Deborah Cuevas Hill (D.C. Bar #494613)
Legal Counsel for the Elderly

601 E Street NW
Washington, DC 20049
bcoiner@aarp.org
dcuevashill@aarp.org
202-434-6021
*Counsel for Plaintiff Lilly V. Evans*

*/s/ Raymond P. Tolentino*
Raymond P. Tolentino