**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LILLY V. EVANS
5335 Jay Street NE
Washington, DC 20019,

Plaintiff,

v.

UNISON AGREEMENT CORP., et al.,

Defendants.

Civil Action No: 1:26-cv-00999-RC

# PLAINTIFF'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY AND DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT PENDING THE COURT'S RESOLUTION OF DEFENDANTS' MOTION TO STAY

Plaintiff Lilly V. Evans, by and through undersigned counsel, hereby submits this consolidated memorandum of law in opposition to Defendants' Motion to Stay and Memorandum of Points and Authorities in Support of Defendants' Motion to Stay (Defs.' Mem.), Dkt. No. 12, and Defendants' Motion for Extension of Time to Respond to Plaintiff's Complaint Pending the Court's Resolution of Defendants' Motion to Stay (Mot. to Extend), Dkt. No. 13, filed by Defendants Unison Agreement Corp. (UAC); Unison Investment Management, LLC (UIM); Real Estate Equity Exchange, Inc. (REEE); Odin New Horizon Real Estate Fund, L.P. (Odin); Odin New Horizon General Partner LLC; Ismael Casas, Jr. (collectively Unison or the Unison Defendants); and Vantage Point Title, Inc (Vantage Point).

After affirmatively electing to move this case to federal court, Defendants now argue that this Court is not the appropriate venue to resolve Plaintiff's disputes. Instead, they seek a stay for

the entire duration of a separate case recently filed against a subset of Defendants and ask that they be relieved from the obligation even of pleading in this case in the interim. Because there is no legal basis for so doing, and for the reasons set forth herein, this Court should deny both motions and allow this case to proceed.

## BACKGROUND

Plaintiff Lilly V. Evans originally filed the instant action in the Superior Court of the District of Columbia on February 5, 2026. The Complaint, Dkt. No. 1-1, alleged 14 counts, all under District of Columbia law,[1] relating to a predatory mortgage loan that she was fraudulently induced to enter into with Unison (the Unison Transaction)[2] with regard to her residence at 5335 Jay Street NE, Washington, D.C. 20019 (the Jay Street Residence). In the Complaint, Ms. Evans alleges that she was fraudulently and deceptively induced to enter into an illegal and deliberately confusing mortgage contract by Unison that has tied up the equity she has built in the Jay Street Residence under an ill-gotten Deed of Trust. *See* Compl. ¶¶ 2-3, 77-191. As a result, she seeks a ruling that the Unison Transaction is void and unenforceable and removing the wrongfully obtained Deed of Trust that currently is clouding title to the Jay Street Residence, as well as legal and equitable relief and fees under the D.C. Consumer Protection Procedures Act (CPPA) and

---

[1] Because the Complaint does not raise any federal claims, Defendants are incorrect that federal question jurisdiction applies to this case as it is currently pleaded. *See* Defs.' Mem. 3. However, Plaintiff does not dispute that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff reserves the right to amend her Complaint, consistent with Fed. R. Civ. P. 15, to add other state or federal claims.

[2] The Complaint identifies the Unison Transaction—in which Ms. Evans received an up-front payment in exchange for a Deed of Trust guaranteeing a future repayment with interest—as the Unison Mortgage. Consistent with Unison's branding (and, presumably, to avoid conceding a core issue in this case), Defendants refer to it as an "equity-sharing agreement" or "ESA." To maximize the consistency and readability of filings in this Court, Plaintiff here uses the neutral term, "Unison Transaction," without conceding or changing its view that the transaction properly is described as a mortgage under D.C. law.

D.C. common law. Compl. at 58 (Prayer for Relief). The Complaint was filed by undersigned counsel at AARP Foundation and attorneys from Legal Counsel for the Elderly, all of whom continue to represent Ms. Evans.

On February 11, 2026, a separate case was filed by the National Association of Consumer Advocates, Inc. (NACA) in the Superior Court of the District of Columbia against a subset of the Defendants in this action: UAC, UIM, and REEE only. *See NACA v. Unison Agreement Corp.*, No. 2026-CAB-000955 (D.C. Super. Ct. filed Feb. 11, 2026) [hereinafter *NACA* Action]. The complaint in the *NACA* Action was signed by Elizabeth Aniskevich, of Singleton Schreiber, LLP, with attorneys from AARP Foundation and from NACA itself listed on the complaint as "Co-Counsel for Plaintiff." Decl. of Raymond P. Tolentino in Supp. of Defs.' Mot. to Stay Ex. 1 (*NACA* Compl.), at 43, Dkt. No. 12-2. NACA does not allege that it was individually harmed by Unison but, rather, proceeds under D.C. Code § 28-3905(k)(1)(D), which allows "a public interest organization [to], on behalf of the interest of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District." NACA's complaint alleges only a single count under the CPPA, arising from Unison's general business practices, *NACA* Compl. ¶¶ 173-96, and primarily seeks prospective injunctive and declaratory relief with respect to Unison's products generally as well as other equitable relief. *Id.* ¶ 198.

After the Unison Defendants were duly served in this case,[3] Unison's counsel contacted Plaintiff's counsel on March 5, 2026 to request an extension of time to answer. The parties

---

[3] Because the initial attempt to serve Vantage Point was unsuccessful, it was not served until March 20, 2026.

eventually filed a joint motion for mutual extensions in D.C. Superior Court, which was granted.[4] On March 16, 2026, Unison's counsel contacted Plaintiff's counsel once again to advise that they had been retained by Defendant Casas and to confirm that Plaintiff shared their understanding that the extension of time to answer applied to him as well. On March 19, 2026, counsel for the Unison Defendants requested a meeting with Plaintiff's counsel, which took place virtually on March 23, 2026. At that meeting, counsel for the Unison Defendants advised of their intent to remove this case to U.S. District Court, which they did that same day by filing a Notice of Removal in both courts. The following day, counsel for the Unison Defendants requested Plaintiff's agreement to request that the deadlines in this Court be extended to match those that had been set in D.C. Superior Court, which eventually resulted in a joint motion being filed on March 25, 2026, and granted that same day.

Over nearly a month of communications between counsel regarding this case, many of which specifically related to timing and venue, Defendants did not raise, discuss, or even mention the possibility of staying this case even once. Now, out of the blue, they insist that this case not only must be stayed for the duration of the *NACA* Action—likely a period of several years—but that they should be relieved from even having to respond timely to the Complaint regardless of whether the Motion to Stay is granted.

Defendants could have sought to treat this action and the *NACA* Action as related—or even to consolidate them—while both were pending in D.C. Superior Court. They did not.[5] If

[4] Also on March 5, 2026, Unison's counsel sent a separate email to counsel in the *NACA* Action requesting an extension. None of the attorneys in this case participated in that exchange other than being cc-ed and, although both discussions resulted in mutual extensions, the discussions were separate and distinct.

[5] Plaintiffs do not believe that consolidation would have been appropriate in any event, but Defendants have effectively foreclosed the possibility of litigating that issue by removing this case.

Defendants believed that D.C. Superior Court is the most appropriate venue for this case, they could have chosen to remain there. They did not. Instead, Defendants chose to negotiate an extension of time, remove this case to federal court, request an extension of time once again, and only *now* come to this Court seeking a stay. This course of conduct suggests one of two conclusions: Either Defendants are forum shopping after feeling buyer's remorse for the federal forum that they have chosen, or Defendants have been slow-rolling an improper attempt to delay these proceedings. In any event, Defendants have not set forth any valid legal basis for staying this case. Accordingly, both Motions should be denied.

## ARGUMENT

### I. Because Federal Courts Are Well-Equipped to Rule on Matters of State Law and There Is No Bar on Simultaneous State-Federal Proceedings, this Court Should Exercise Its Rightful Jurisdiction and Allow This Case to Proceed

A district court may stay a federal action in favor of a concurrent state action only under "exceptional circumstances" because federal courts have the "virtually unflagging obligation … to exercise" their jurisdiction. *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 550-52 (D.C. Cir. 2019) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). The mere existence of parallel state-court proceedings does not alleviate this obligation. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

Here, Defendants argue that either (1) this mine-run civil case arising out of a single consumer transaction is "'exceptional'" so as to justify a stay under *Colorado River*, *see* Defs.' Mem. 4 (quoting *Colo. River*, 424 U.S. at 813); or (2) this private dispute under D.C. consumer statutes and common law raises "'a difficult question of state law that bears on policy problems of substantial public import,'" *id.* at 12 (quoting *Atkinson v. Grindstone Cap., LLC*, 12 F. Supp. 3d 156, 160-61 (D.D.C. 2014)). Defendants also argue, in the alternative, that even though no existing

abstention doctrine justifies staying this case, the Court should do so regardless in a discretionary exercise of its inherent authority. *Id.* at 14. Defendants cannot prevail on any of these grounds.

### A. Because This Private Consumer Dispute Between a Handful of Parties Does Not Constitute "Exceptional Circumstances," *Colorado River* Does Not Apply

Under the Supreme Court's ruling in *Colorado River*, a federal district court may abstain from moving forward with a case "under 'exceptional' circumstances 'due to the presence of a concurrent state proceeding.'" *Edge Inv.*, 927 F.3d at 465 (quoting *Colo. River*, 424 U.S. at 818). Because only exceptional circumstances will allow such deferral, "the factors favoring a stay must themselves be exceptional." *Edge Inv.*, 927 F.3d at 554 (quoting *Hoai v. Sun Refining & Marketing Co., Inc.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989)). In considering whether to grant such a stay, the court must "weigh[] a number of factors, including the inconvenience of the federal forum, the order in which the courts assumed jurisdiction, the desirability of avoiding piecemeal litigation, whether federal or state law controls and whether the state forum will adequately protect the interests of the parties." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003) (citing *Colo. River,* 424 U.S. at 817). Critically, the *Colorado River* doctrine is exceedingly narrow. "[A]s befits an exception so described, the Supreme Court has found sufficient justification only in the circumstances described in *Colorado River* itself, while [the D.C. Circuit] has never found such circumstances." *Edge Inv.*, 927 F.3d at 553.

#### 1. There Is No Prohibition on Entertaining Parallel State-Federal Proceedings

Defendants focus heavily on their argument that, "[g]iven the 'substantial similarity'" between this case and the *NACA* Action, "there is no question that this case and NACA's action in D.C. Superior Court qualify as parallel proceedings." Defs.' Mem. 8. Even were this true, it is irrelevant.

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ….'" *Colo. River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Defendants rely on *Edge Investment* to claim that allowing this case to proceed concurrently with the *NACA* Action would "open[] the floodgates to individual, piecemeal" litigation because "both cases challenge the same conduct and seek the same relief." Defs.' Mem. 9 (citing *Edge Inv.*, 927 F.3d at 556). But *Edge Investment* squarely *rejects* Defendants' argument. The "mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation." *Edge Inv.*, 927 F.3d at 555 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 7 (1983)). Rather, *Edge Investment* contrasted "abnormally excessive or deleterious" litigation with "a garden-variety example of two lawsuits proceeding concurrently in two courts" where "hypothetical conflicts over discrete issues do not amount to an exceptional circumstance." *Edge Inv.*, 927 F. 3d at 556.

This is a far cry from the type of "piecemeal litigation" at issue in *Colorado River* in which "[b]y far the most important factor … was the 'clear federal policy … [of] avoidance of piecemeal adjudication of water rights in a river system.'" *Moses H. Cone*, 460 U.S. at 16 (quoting *Colo. River*, 424 U.S. at 819). This is because "the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts." *Id.* (citing *Colo. River*, 424 U.S. at 819-20). Defendants' unsupported assertion that "[t]he same principles apply equally here," Defs.' Mem. 10, would allow *Colorado River* to far overrun its banks. Defendants' reasoning "'would seemingly support abstention in every federal case that has a parallel state case.'" *Edge Inv.*, 927 F.3d at 556 (quoting *Ambrosia Coal & Constr. Co., v. Pagés Morales*, 368 F.3d 1320, 1333 (11th

Cir. 2004)). This case involves neither a comprehensive statutory scheme nor an abnormally excessive or deleterious fragmentation of claims—only ordinary parallel state-federal litigation, which "the principle of avoiding duplicative litigation does not generally govern." *Edge Inv.* 927 F.3d at 555.

And even if some issues in the two cases do overlap, it is simply not true that "the resolution of *NACA* will necessarily dispose of Plaintiff's claims here." Defs.' Mem. 6. First, Ms. Evans has asserted claims specific to her that NACA, proceeding on behalf of all D.C. consumers, simply cannot. Ms. Evans alleged that *she* was misled, Compl. ¶¶ 192-98, that *she* did not receive required disclosures, *e.g.*, *id.* ¶¶ 182, 197, and that *she* was induced to enter into the Unison Transaction as part of a rushed, deceptive, and unconscionable process, *id.* ¶¶ 77-103. This is distinct from the *NACA* Complaint, which alleges facts as to Unison's business practices generally. *See, e.g.*, *NACA* Compl. ¶¶ 5-12. And while either action could result in a ruling that the Unison Transaction is, indeed, a mortgage, *cf.* Defs.' Mem. 7, the *NACA* Action would not rule on Ms. Evans's fraud claims, provide relief against Odin—who currently holds the Deed of Trust clouding title to the Jay Street Residence—nor compensate Ms. Evans for the personal harms she has experienced. Contrary to Defendants' argument, this is not a case in which this Court would have "'nothing further to do in resolving any substantive part of the case.'" *US Dominion, Inc. v. Herring Networks, Inc.*, 639 F. Supp. 3d 143, 155 (D.D.C. 2022) (quoting *Moses H. Cone*, 460 U.S. at 28) (denying motion to stay under *Colorado River*). Indeed, key relief Defendants—such as Odin, who holds the Deed of Trust, and Vantage Point, who was instrumental in inducing Ms. Evans to execute the Unison Transaction—are not even named as Defendants in the *NACA* Action.

### 2. Defendants Have Not Identified Any Other "Exceptional" Factor that Overrides Defendants' Own Choice of a Federal Forum

Defendants claim this Court should abstain from hearing this case because four factors—(1) the need to avoid piecemeal litigation; (2) which court first assumed jurisdiction over property; (3) whether state or federal law controls; and (4) the adequacy of the state court to protect the parties' rights—all favor a stay. Defs.' Mem. 8. "The problem with this kind of toting up, however, is that it runs contrary to the Supreme Court's direction that deferral 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Edge Inv.*, 927 F.3d at 554 (quoting *Moses H. Cone*, 460 U.S. at 16 (emphasis added)). "[It] is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the factors favoring deferral must themselves be exceptional." *Id.*

Even looking at each factor, none supports a stay of this case. First, as discussed above, the present circumstances simply are not the type of piecemeal litigation that justifies a stay. Second, *no court* has taken jurisdiction over property here because this is not an *in rem* action.[6] *Cf. Colo. River*, 424 U.S. at 818 ("[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.") (citing cases); *see also Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("An exception" to the general rule allowing for concurrent state-federal jurisdiction "has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem."). Third, having consciously moved this case to federal court, Defendants cannot now claim that D.C. Superior Court is better prepared to rule on D.C. law or to protect the

[6] Even if custodial property were at issue, it would be limited to the Jay Street Residence in this case only, and this case now has been transferred to this Court following Defendants' request for removal.

parties' rights. Federal courts in the District of Columbia "routinely resolve questions under the D.C. Code." *Edge Inv.*, 927 F.3d at 559. Indeed, this Court has presided over numerous cases under the CPPA without issue.[7] Any potential "inconsistency and confusion," Defs.' Mem. 11, resulting from two cases dealing with a related issue is "substantially mitigate[d]" by "the doctrines of res judicata and collateral estoppel," *Edge Inv.* 927 F.3d at 554, and Defendants do not otherwise explain why this issue is uniquely beyond the ken of this Court. Finally, to argue simply that "D.C. Superior Court proceedings are also more than adequate to protect the parties' rights," Defs.' Mem. 12, is to concede that the fourth factor is not "exceptional," but merely neutral.

In the Motion to Stay, Defendants essentially ask the Court to save them from themselves. To wit, Defendants not only argue that this case is exceptionally unsuited for federal adjudication, but also that their affirmative decision that this Court was a preferable venue to D.C. Superior Court should be given no weight. If nothing else, this "violates [the Court's] chutzpah doctrine" and the stay should be denied on that basis as well. *See Phoenix Herpetological Soc., Inc. v. U.S. Fish & Wildlife Serv.*, 998 F.3d 999, 1005 n.13 (D.C. Cir. 2021) (party who filed inconsistent and ever-changing applications could not argue they were handled inconsistently); *Marks v. C.I.R.*, 947 F.2d 983, 986 (D.C. Cir. 1991) (fugitives from federal prosecution could not argue tax notices were mailed to incorrect address). The only exceptional circumstance here is Defendants' sudden turnabout, and so the Motion to Stay should be denied.

[7] *See generally Best v. Second Nature, Inc.*, No. 24-cv-1799 (JMC), 2026 WL 887055 (D.D.C. Mar. 31, 2026); *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 416 (D.D.C. 2020); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 268 (D.D.C. 2015).

### B. Because This Civil Dispute Between Private Parties Does Not Involve the Interpretation of D.C. Public Policy or Governmental Powers, *Thibodaux* Does Not Apply

Defendants also argue a stay is appropriate under *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25 (1959), under which a federal court may decline to hear a case "when presented with difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar." *Colo. River*, 424 U.S. at 814 (citing *Thibodaux*); *see also* Defs.' Mem. 12. But *Thibodaux* contemplates situations where the public matter at hand is "'intimately involved with [the States'] sovereign prerogative,' the proper adjudication of which might be impaired by unsettled questions of state law." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (quoting *Thibodaux*, 360 U.S. at 28).

Because of its narrow scope, *Thibodaux* abstention has been described as "the 'rarest of birds.'" *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 932 (9th Cir. 2024). There is minimal case law in this Circuit applying *Thibodaux*, and what exists is limited to cases in which the nature or scope of governmental power was a threshold issue. *See Williams v. Hot Shoppes, Inc.*, 293 F.2d 835, 841 (D.C. Cir. 1961) (allowing Virginia courts to determine whether state law compelled segregation by restaurant so as to render it a state actor); *cf. District of Columbia v. 109,205.5 Sq. Feet of Land*, No. Civ.A. 05-202(RMU), 2005 WL 975745, at *5 (D.D.C. Apr. 21, 2005) (scope of eminent domain power amenable to *Thibodaux* abstention). On the other hand, "[a] contract dispute between two private parties that relates to the state's interests in insurance regulation doesn't fall within *Thibodaux*'s narrow purview." *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 517, 533 (6th Cir. 2025). This reasoning applies with equal force to this consumer suit between private parties. "[T]he mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction in favor of state court action." *Thibodaux*, 360 U.S. at 27 (citing

*Meredith v. City of Winter Haven*, 320 U.S. 228 (1943)). "Otherwise, *Thibodaux* abstention would swallow diversity jurisdiction in cases where state law is unsettled—which is not at all uncommon." *Fire-Dex*, 139 F.4th at 534 (citing *Meredith*, 330 U.S. at 236).

The cases cited by Defendants wholly support this reading of *Thibodaux*. For example, in *Dano Resource Recovery, Inc. v. District of Columbia*, the court abstained from deciding whether and how the D.C.'s procurement law governed a government contract dispute as well as how the procurement law interacted with the Home Rule Act. No. CIV. A. 91-571 SSH, 1992 WL 165977, at *2 (D.D.C. June 30, 1992). This was a sufficient local concern because of its effect on "the manner of resolving government contract disputes in the District of Columbia" as well as "affect[ing] the District of Columbia courts," *id.*, not because it was an important dispute between private parties. *Atkinson*, which pre-dates the D.C. Circuit's analysis of *Colorado River* abstention in *Edge Investment*—is even less on point. There, the district court conducted its analysis under the *Colorado River* abstention doctrine and merely cited to *Thibodaux* as one of the abstention methods possible for a federal court. 12 F. Supp. 3d at 161.

No doubt, this case is exceedingly important to the litigants and, like all cases, has the potential to establish precedent for future cases. But that is not enough to bring this private dispute within *Thibodaux*'s ambit.

### C. Because Defendants Seek an Indefinite Stay Likely to Last Years and No Imminent Case Is Likely to Clarify the Law at Issue, a Discretionary Stay Is Not Warranted

Defendants also make an alternative, last-ditch argument that this Court should use its "inherent and discretionary authority to stay this action." Defs.' Mem. 14. This authority derives from *Landis v. North American Company*, 299 U.S. 248 (1936), which also "instructed that a court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'"

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 231-32 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

Here, Defendants seek a stay for the entire duration of another, newly filed case with no indication as to "when such a resolution is likely to be reached, and so the stay has 'the legal effect of preventing [Plaintiff] from proceeding with [her] claims in federal court for an indefinite period of time, potentially for years.'" *Belize Soc. Dev. Ltd.*, 668 F.3d at 732 (quoting *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1169 (11th Cir. 2007)). To argue that such a stay is warranted, Defendants rely on a single case from this jurisdiction, *Fonville v. District of Columbia*, 766 F. Supp. 2d 171 (D.D.C. 2011), *cited in* Mot. 14-16.[8] But *Fonville* involved specific and narrow facts not remotely applicable here. By the time that case was stayed, litigation already had proceeded for eight years and had come to hinge on a single "threshold—and dispositive—issue," *i.e.* whether the plaintiff had had a property right in his rank as a Metropolitan Police Department officer. *Id.* at 172. A stay was finally granted not because of the mere possibility of a ruling on that issue in another case but, rather, because there were two active appeals pending in the D.C. Court of Appeals—one of which already was fully briefed—that were expected to resolve that threshold issue as a matter of D.C. law. *Id.* at 174.

The other out-of-circuit cases on which Defendants rely similarly granted discretionary stays because of a pending *appeal* that could resolve the issues before the court, not simply a

[8] Though Defendants also cite to *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 8 (D.D.C. 2019), they do so only for the uncontroversial proposition that this Court "'is bound by decisions of the District of Columbia Court of Appeals—the highest court in D.C.—interpreting D.C. law.'" Mot. 15-16 (citing *Attias*, 365 F. Supp. 3d at 8).

related trial-court case. *See Windward Bora, LLC v. Bank of N.Y. Mellon ex rel. Certificateholders of Cwalt, Inc.*, No. 19-CV-858 (RPK) (RML), 2020 WL 7042761 (E.D.N.Y. Nov. 30, 2020) (finding discretionary stay appropriate where appeal of years-long state-court litigation including same parties was pending); *Karol v. Old Second Nat'l Bank*, No. 20 C 4344, 2020 WL 6343088 (N.D. Ill. Oct. 29, 2020) (finding stay appropriate under *Colorado River* and inherent authority where federal case was filed after earlier state case addressing similar issues already had been appealed). These cases have no applicability here, where both cases are in their early stages and there is no indication that an appellate court will be weighing in on key issues anytime soon. The Court's discretion to stay this case is not unbounded, *see Belize Soc. Dev. Ltd.*, 668 F.3d at 188, and a stay is not justified here.

## II. Because Abstention Principles Do Not Apply, the Motion for Extension of Time Is Little More than a Further Attempt to Delay this Case and Should Be Denied

Simultaneously with the Motion to Stay, Defendants filed a Motion to Extend seeking to delay their deadline to respond to the Complaint—currently May 11, 2026—indefinitely until the Court rules on the Motion to Stay. Defendants provide no justification for this request other than that "[i]f the Court grants the requested stay," "there would be no reason for the parties to expend significant time and resources at this time" on motion briefing. Mot. to Extend ¶ 5. In essence, Defendants argue that the Court should grant them a stay now—regardless of the merits of the Motion to Stay—in case the Court decides that it is justified in the future.

As discussed above, the Motion to Stay lacks merit and should be denied; the Motion to Extend should be denied for the same reason. Moreover, to the extent that there is now time pressure in this case, it is primarily due to Defendants' delay. Defendants' counsel was active in this case by the first week of March, and yet they waited until April to file this motion. They did so only after securing an extension by consent with the expectation that Defendants would be filing

an answer. Doubtless, Plaintiff would not have agreed to an extension had she known that Defendants were simply buying time in order to buy more time.

Defendants have set forth no basis to stay this case other than that they would like the case to be delayed. That alone does not justify delay, whether in the form of a stay or a mere extension of time to answer the Complaint in this case.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay, Dkt. No. 12, and Defendants' Motion for Extension of Time to Respond to Plaintiff's Complaint Pending the Court's Resolution of Defendants' Motion to Stay, Dkt. No. 13, should both be denied.

Dated: April 10, 2026

Respectfully Submitted,

*/s/ David S. Yellin*

David S. Yellin (Bar #1028475)
Sébastien Monzón Rueda (Bar #1025974)
AARP Foundation
601 E Street NW
Washington, DC 20049
dyellin@aarp.org
smonzonrueda@aarp.org
202-434-3389

*Counsel for Plaintiff Lilly V. Evans*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed through the CM/ECF system on April 10, 2026 and served by Notice of Electronic Filing on all counsel of record.

*s/ David S. Yellin*