**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LILLY V. EVANS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 26-999 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| UNISON AGREEMENT CORP., et al., | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

## DENYING DEFENDANTS' MOTION TO STAY

## I. INTRODUCTION

This case concerns a transaction between Defendant Unison Agreement Corp. ("Unison") and Plaintiff Lilly Evans, wherein Ms. Evans received an up-front payment in exchange for an "option to buy a partial interest in [Ms. Evans's] property in the future for a set price." Defs.' Mem. P. & A. Supp. Mot. Stay ("Defs.' Br.") at 1, ECF No. 12. Among other claims, Ms. Evans contends that Defendants violated the D.C. Consumer Protection Procedures Act ("CPPA") by representing to her that this transaction was not a mortgage loan.[1] *See* Compl. ¶¶ 209, 219, 228, 248–52, 256–61, ECF No. 1-1.

Defendants now move to stay this case pending the outcome of a similar action brought by the National Association of Consumer Advocates, Inc. ("NACA") in D.C. Superior Court. Defs.' Br. at 1–2. For the reasons set forth below, the Court denies Defendants' motion.

[1] Defendants, in their briefing, refer to the transaction as an equity-sharing agreement or ESA. *See* Defs.' Br. at 1.

## II. FACTUAL BACKGROUND

### A. Relevant Facts

Ms. Evans is a homeowner here in D.C. *See* Pl.'s Consolidated Mem. Opp'n Defs.' Mot. Stay ("Pl.'s Opp'n") at 2, ECF No. 14. Around 2018, Ms. Evans alleges that she received a solicitation from Unison advertising a way to pay off her debts. Compl. ¶ 61. She further alleges that after calling the number in Unison's advertising, she was told "that Unison would pay her money in exchange for an interest in her house," and that "she would not have to pay [the money] back." *Id.* ¶¶ 64, 66. She claims that "[t]hroughout the application process, [she] was repeatedly told that the transaction she was entering into was not a loan." *Id.* ¶ 75. Defendants characterize the ensuing transaction with Ms. Evans as follows: "upfront capital with no monthly payments, no interest accrual, and virtually no likelihood of foreclosure in return for the option to buy a partial interest in [the] property in the future for a set price." Defs.' Br. at 1. On the other hand, Ms. Evans contends that Unison "obfuscate[s] the true nature of its transaction with [her]," because "[s]tripped of deliberately complex accounting, lengthy and convoluted contracts, and opaque terminology, Unison's product is a loan." Compl. ¶ 146.

### B. Procedural Background

Ms. Evans first filed this case in D.C. Superior Court on February 5, 2026. *See* ECF No. 1-1. Unison then removed the case to federal court, ECF No. 1, before moving to stay these proceedings pending the outcome of a related Superior Court proceeding, ECF No. 12. That case was filed on February 11, 2026, by NACA against a subset of the Defendants named in Ms. Evan's complaint. *See generally* Compl., *NACA v. Unison Agreement Corp., et al.*, No. 2026-CAB-000955 (D.C. Super. Ct.) ("NACA Compl."), ECF No. 12-2. NACA does not allege that it was itself harmed by the Defendants but rather proceeds under D.C. Code § 28-3905(k)(1)(D),

which permits "a public interest organization [to], on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District." *See* NACA Compl. ¶ 173. NACA brought suit on behalf of "District consumers who entered into Unison HomeBuyer and HomeOwner Agreements," *id.* ¶ 175, a group that includes Ms. Evans. And NACA alleges many of the same violations of the CPPA as Ms. Evans's complaint does. *See id.* ¶ 176; *see also* Compl. ¶¶ 204–64. Given the similarity between the two cases, Defendants now move to stay this case pending the resolution of the NACA case.

**III. LEGAL STANDARD**

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation modified). Defendants recommend that this court grant a stay pursuant to either the *Colorado River* doctrine, *Thibodaux* abstention, or this Court's own inherent discretionary authority to manage its docket. *See* Defs.' Br. at 2.

"The *Colorado River* doctrine . . . 'permits a federal court to stay or dismiss a federal action in favor of a concurrent action in state court under exceptional circumstances.'" *US Dominion, Inc. v. Herring Networks, Inc.*, 639 F. Supp. 3d 143, 153 (D.D.C. 2022) (quoting *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 550 (D.C. Cir. 2019) (citation modified)). Its "principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (citation modified). And by invoking the doctrine, the Court "concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution

of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

*Thibodaux* abstention applies "when a suit raises unsettled questions of state law that are 'intimately involved with' a state's 'sovereign prerogative.'" *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 533 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 1453 (2026) (quoting *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959)). Examples include "the extent of a local government's eminent domain power and 'the apportionment of governmental powers between City and State.'" *Id.* (quoting *Thibodaux*, 360 U.S. at 28).

Lastly, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The application of this power requires an "exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55.

## IV. ANALYSIS

### A. *Colorado River* Doctrine

*Colorado River* and its progeny set forth a balancing test for courts to apply when deciding whether to stay proceedings while a related action in state court proceeds.[2] The factors are as follows: "(1) whether one court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the

[2] While D.C. Superior Court is not technically a state court, as it is a creature of federal law, the standard for a discretionary stay in favor of Superior Court is the same as it would be for any state court. *Cf. Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 351 (D.C. Cir. 2003) ("Although the Superior Court is a congressionally created court and, thus, 'federal' in its creation, we have heretofore reviewed the district court's discretionary dismissal in favor of parallel proceedings in Superior Court under the standard applicable to a parallel state court proceeding.").

order in which the courts obtained jurisdiction over their respective actions; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the parties' interests." *Gustafson v. Washington Nationals Baseball Club, LLC*, No. 25-CV-03033 (APM), 2026 WL 1098684, at *6 (D.D.C. Apr. 23, 2026). This test has been referred to as the "exceptional-circumstances test," *Moses H. Cone*, 460 U.S. at 16, and as that name suggests, "[a]ll of the subsequent Supreme Court and D.C. Circuit cases addressing the *Colorado River* doctrine have stressed the unflagging obligation of the federal courts to exercise their jurisdiction." *Edge Inv.*, 927 F.3d at 552. Therefore, while courts apply a "careful balancing of the important factors as they apply in a given case," the balance is "heavily weighted in favor of the exercise of jurisdiction." *Id.* at 553 (quoting *Moses H. Cone*, 460 U.S. at 16). In essence, "only 'exceptional circumstances' and 'the clearest of justifications will warrant' deferral based on concurrent state and federal proceedings." *US Dominion*, 639 F. Supp. 3d at 154 (quoting *Edge Inv.*, 927 F.3d at 552–53).

Defendants concede that the factors relating to the inconvenience of the federal forum and the order in which the Superior Court and this Court took jurisdiction over the two actions are neutral.[3] *See* Defs.' Br. at 8–9 n.4. But they argue that the remaining four factors support abstention. *See id.* at 8. However, the Court finds that none presents an exceptional circumstance that would warrant a stay.

[3] With respect to the factor concerning the order in which each court obtained jurisdiction, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. This Court took jurisdiction over this case when the notice of removal was filed on March 23, 2026. *See* ECF No. 1. While this was after the filing of the NACA case on February 11, 2026, "no substantial proceedings" had taken place in the state suit by the time this Court took jurisdiction. *Moses H. Cone*, 460 U.S. at 22. Thus, Defendants correctly note that the factor is neutral because neither suit had progressed significantly further than the other at the time this Court took jurisdiction.

Defendants first point to the risk of piecemeal litigation, arguing that "allowing both cases to proceed, when both challenge the same conduct and seek the same relief will result in abnormally excessive and deleterious piecemeal litigation." Defs.' Br. at 9. This factor "assumed importance in *Colorado River* because the litigation there involved a federal statute under which Congress had explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy favoring resolution of those rights in a single, comprehensive forum." *Hoai v. Sun Refin. & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989). Defendants contend that the CPPA similarly contains a policy favoring adjudication in the D.C. Superior Court. *See* Defs.' Br. at 10. The relevant provision of the Act upon which Defendants rely provides that any claim "*shall* be brought in the Superior Court of the District of Columbia," D.C. Code § 28-3905(k)(2) (emphasis added); *see also* Defs.' Br. at 10, and they argue that this language expresses a "policy favoring D.C. courts addressing this issue in the first instance." Defs.' Br. at 10. The Court disagrees.

Interpreting the same language, the District of Columbia Court of Appeals has held that "[t]he CPPA simply does not contain a clear and express abrogation of parties' long-settled right to select a forum of their choosing." *Roberts v. Advanced Bldg. Design, Inc.*, 339 A.3d 758, 762 (D.C. 2025). Rather, the purpose of the language is to "tell[] consumers . . . where they must bring their claims in the ordinary course," an important clarification given that other sections of the CPPA provide for a complaint procedure before one of the District's agencies. *Id.* at 762–63. The seemingly mandatory language in the Act serves to direct plaintiffs who, after choosing among "two distinct tracks for relief," opt for a private action under the CPPA to pursue their claim in the Superior Court. *Id.* at 763. And, as Defendants concede, the CPPA does not preclude federal diversity jurisdiction. *See* Defs.' Br. at 10 n.5; *cf. District of Columbia ex rel.*

*Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1045–46 (D.C. Cir. 1986) (explaining that the Little Miller Act, which provides that suits under the Act "shall" be brought in D.C. court, did not "defeat diversity jurisdiction").

Defendants ask this Court to read into the CPPA a policy favoring adjudication in D.C. Superior Court over federal court solely on the basis of a mandatory "shall" in § 28-3905. The Court declines to do so because "[w]hether the state law that provides for the requisite state court jurisdiction is couched in permissive or mandatory terms has never been thought to affect the federal courts' jurisdiction." *Am. Combustion*, 797 F.2d at 1045.

However, "even without a statutory policy, the avoidance of piecemeal litigation remains a relevant (although perhaps less important) factor under the *Colorado River* doctrine." *Edge Inv.*, 927 F.3d at 555. Defendants contend that "allowing both cases to proceed, when both challenge the same conduct and seek the same relief, . . . risks squandering judicial and party resources while opening the floodgates to individual, piecemeal suits challenging each [equity-sharing agreement ('ESA')] between Unison and D.C. homeowners." Defs.' Br. at 9. But "the mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation." *Edge Inv.*, 927 F.3d at 555. And this case does not present a risk of piecemeal litigation similar to that in *Colorado River*, where the United States "had sued roughly 1,000 water users, while a state court simultaneously adjudicated all federal and state water rights claims." *Gustafson*, 2026 WL 1098684, at *7 (citing *Colo. River*, 424 U.S. at 805–06). Thus, without risk of "abnormally excessive or deleterious" piecemeal litigation, this factor does not support a stay. *Edge Inv.*, 927 F.3d at 556 (citation modified).

Defendants then argue that this Court should step aside because "the D.C. Superior Court first had jurisdiction over the Property when Evans initially filed her complaint in that court, and

both cases challenge Unison's ESA pertaining to the Property." Defs.' Br. at 10. It is true that *Colorado River* notes that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." 424 U.S. at 818. And Ms. Evans does seek a ruling "removing the . . . Deed of Trust" that she claims is "clouding the title to" her residence. Pl.'s Opp'n at 2. However, all of the cases cited for this factor by *Colorado River* refer to proceedings *in rem* or *quasi in rem*. *See Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("An exception has been made in cases where a court has custody of property, that is, proceedings *in rem* or *quasi in rem*."); *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("[I]f the two suits are in rem, or quasi in rem, . . . the jurisdiction of the one court must yield to that of the other."); *United States v. Bank of N.Y. & Tr. Co.*, 296 U.S. 463, 477 (1936) ("If the two suits are in rem or quasi in rem, . . . the jurisdiction of one court must of necessity yield to that of the other."). By contrast, this proceeding is *in personam*, and the concern expressed in those cases is not relevant here because the Court does not need possession or control of the property to proceed with this case. *See Princess Lida*, 305 U.S. at 465–66.

Next, Defendants suggest that the fact that "D.C. law controls" counsels in favor of a stay. Defs.' Br. at 11. However, it is difficult to understand how the presence of a controlling issue of state law, on its own, could be considered an exceptional circumstance warranting a stay. After all, "this [C]ourt routinely resolves questions under the D.C. Code" and "the common law of the District of Columbia." *Edge Inv.*, 927 F.3d at 559–60; *see, e.g.*, *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 38–39 (D.D.C. 2019) ("The plaintiff has sufficiently alleged facts plausibly showing that the defendants meet the CPPA's definition of 'merchant.'"); *Dorn v. McTigue*, 157 F. Supp. 2d 37, 48 (D.D.C. 2001) ("[T]he defendant is a 'merchant,' as required under the CPPA, because he supplied services that are the 'subject matter of a trade practice,' namely, services

that are the subject of medical practice.”). Defendants raise the specter of contradictory rulings between this Court and the D.C. Superior Court, one voiding the transaction and the other upholding it, which might force the D.C. Recorder’s Office “to choose whether to void the Property’s deed in light of [these] contradictory rulings.” Defs.’ Br. at 11. However, “*hypothetical* conflicts over discrete issues do not amount to an exceptional circumstance.” *Edge Inv.*, 927 F.3d at 556 (emphasis added).

Lastly, Defendants argue that the “Superior Court proceedings are . . . more than adequate to protect the parties’ rights.” Defs.’ Br. at 12. They further contend that this factor “too is exceptional because . . . Plaintiff filed her complaint against Defendants in D.C. Superior Court,” *id.*, asserting that the “undisputed adequacy of the state forum *favors* a stay,” Defs.’ Consolidated Reply Supp. Mot. Stay (“Defs.’ Reply”) at 8, ECF No. 15. Characterizing the circumstance where a plaintiff originally files in state court before a defendant removes the case to federal court as “exceptional” seeks to impart a meaning on the word that it cannot bear. Were Defendants correct, the standard practice of removing a case to federal court would always present an “exceptional circumstance” under *Colorado River*. While this Court does not doubt that the Superior Court would adequately protect both parties’ rights, that common reality alone cannot constitute an exceptional circumstance justifying a stay. Ultimately, Defendants have not shown that any of the *Colorado River* factors point to “exceptional circumstances” that would justify a stay, and this Court will not grant a stay pursuant to it. *Moses H. Cone*, 460 U.S. at 19.

**B. *Thibodaux* Abstention**

Alternatively, Defendants argue that this Court should issue a stay under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), because this case presents a novel and unsettled question of D.C. law that bears on policy questions of substantial public import and

goes beyond the results in the instant case. *See* Defs.' Br. at 12–14. However, the mere fact that the law is uncertain or difficult to determine does not suggest that this Court should decline to exercise its jurisdiction. *Cf. Meredith v. City of Winter Haven*, 320 U.S. 228, 236 (1943) ("Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine."). Such a rule would threaten to "swallow diversity jurisdiction in cases where state law is unsettled." *Fire-Dex*, 139 F.4th at 534.

Rather, *Thibodaux* abstention is more narrowly applicable because it only "applies when a suit raises unsettled questions of state law that are 'intimately involved with' a state's 'sovereign prerogative.'" *Id.* at 533 (quoting *Thibodaux*, 360 U.S. at 28). *Thibodaux* presented such a question because it concerned the extent and nature of the state's eminent domain power granted to a city. *See Thibodaux*, 360 U.S. at 28. Merely determining the applicability of the CPPA to a transaction between two private parties does not implicate "sovereign prerogative," nor does it present the "hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities." *Id.* Thus, the Court finds that *Thibodaux* fails to suggest that a stay is warranted in this case.

**C. Inherent Authority**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. As such, Defendants "must make out a clear

case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. Defendants argue that this Court should issue a stay pursuant to its inherent and discretionary authority. The core of their argument is that staying this action pending the outcome of the NACA action will both allow for the resolution of a potentially dispositive legal question in a more comprehensive forum and allow D.C. courts, which are best equipped to interpret D.C. law, the first chance to answer that question, precluding the possibility of D.C. courts later reaching a conclusion contrary to this Court's own. *See* Defs.' Br. at 11, 15–16.

"But stating a possibility of inconsistencies in rulings on the same issue, without any explanation on how her claim will suffer any harm, does not establish, in itself, a clear case of hardship." *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (citation modified). And it is not at all clear that an answer to that potentially dispositive legal question will be provided by the D.C. courts any time soon, if at all. As Defendants note, both the NACA case and this case "are in the pleading stage, with neither case more advanced than the other." Defs.' Br. at 15. By contrast, the cases that Defendants provide as examples primarily involved stays granted pending the outcome of significantly more mature state-court litigation. *See Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 174 (D.D.C. 2011) (granting the defendant's motion to stay pending the resolution of cases awaiting judgment in the D.C. Court of Appeals); *Karol v. Old Second Nat'l Bank*, No. 20 C 4344, 2020 WL 6343088, at *6 (N.D. Ill. Oct. 29, 2020) (granting a motion to stay pending the outcome of an appeal to the Illinois Appellate Court); *Windward Bora, LLC v. Bank of N.Y. Mellon as Tr. for Certificateholders of Cwalt, Inc., Alternative Loan Tr. 2007-5CB, Mortg. Pass-Through Certificates, Series 2007-5CB*, No. 19CV858RPKRML, 2020 WL 7042761, at *7 (E.D.N.Y. Nov. 30, 2020) ("The state courts'

expertise and the long-running nature of the state litigation militate strongly in favor of staying federal proceedings pending resolution of the parties' state dispute.").[4]

Perhaps cognizant of the potential delay that would result from a stay pending the final disposition of the NACA action, Defendants suggest that this Court could also "add bounded parameters to the stay, including requiring the parties to file joint status reports every sixty (60) days to update the Court on the status of [the NACA action], and limiting the stay to discovery and dispositive briefing while allowing scheduling-order compliance activities." Defs.' Reply at 12 n.4. However, neither of these suggestions solves this Court's underlying concern, namely, that an authoritative disposition on the core issue of whether the transaction is a mortgage under D.C. law is not likely to be provided anytime soon, if at all. Accordingly, the Court concludes that Defendants have failed to "make out a clear case of hardship or inequity in being required to go forward," *Landis*, 299 U.S. at 255, and declines to grant a stay pursuant to its own discretionary authority.

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to stay (ECF No. 12). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 14, 2026

RUDOLPH CONTRERAS
United States District Judge

[4] Defendants also cite another case from this District, but only for the uncontested proposition that "the Court is bound by decisions of the District of Columbia Court of Appeals—the highest court in D.C.—interpreting D.C. law." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 8 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021); Defs.' Br. at 15–16.