IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LILLY V. EVANS,

Plaintiff,

v.

UNISON AGREEMENT CORP., et al.,

Defendants.

Civil Action No: 1:26-cv-00999-RC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION AND FOR EXPEDITED CONSIDERATION**

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 3

I. A Stay Will Serve Judicial Economy and Avoid Duplicative Proceedings Across Seven Related Actions ........................................................................................ 3

II. D.C. Courts Have Granted Stays Pending JPML Transfer Decisions, and Evans's Argument to the Contrary Fails ........................................................................ 8

III. A Brief Stay Will Not Prejudice Evans, While the Absence of a Stay Will Prejudice Unison ........................................................................................ 12

  A. Evans Will Not Be Prejudiced by a Brief Stay ............................................ 12

  B. The Absence of a Stay Will Prejudice Unison and Waste Judicial Resources ........................................................................................ 17

CONCLUSION ........................................................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*,
48 F. Supp. 2d 37 (D.D.C. 1999) ....................8

*Bartolucci v. 1-800 Contacts, Inc.*,
245 F. Supp. 3d 38 (D.D.C. 2017) ....................9

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ....................10, 15

*Bell v. KFC Corp.*,
No. 1:07-cv-01016 (D.D.C. Sept. 12, 2007) ....................8, 9

*In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) ....................8

*Blackmore v. Smitty's Supply, Inc.*,
451 F. Supp. 3d 1003 (N.D. Iowa 2020) ....................15, 17

*Coffin v. Unison Agreement Corp.*,
No. 1:26-cv-01587 (E.D.N.Y. Aug. 10, 2026), Dkt. No. 36 ....................5

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ....................9, 10

*Cuvellier v. Unison Agreement Corp.*,
No. 3:26-cv-30126 (D. Mass. Aug. 27, 2026), Dkt. No. 15 ....................5

*In re Dish Wireless L.L.C. Commc'n Towers Contract Litig.*,
2026 WL 1659414 (J.P.M.L. June 4, 2026) ....................8

*In re Duke Energy Corp. Sec. Litig.*,
2002 WL 1933798 (S.D.N.Y. Aug. 20, 2002) ....................14

*Edge Inv., LLC v. District of Columbia*,
927 F.3d 549 (D.C. Cir. 2019) ....................10

*Feld Ent., Inc. v. ASPCA*,
523 F. Supp. 2d 1 (D.D.C. 2007) ....................13

*Gaffney v. Tricare Mgmt. Activity*,
No. 1:11-cv-01800 (D.D.C. Apr. 24, 2012), Dkt. 31 ....................9

*In re Healthextras Ins. Mktg. & Sales Pracs. Litig.*,
24 F. Supp. 3d 1376 (J.P.M.L. 2014) ....................15, 17

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*In re Jamster Mktg. Litig.*,
427 F. Supp. 2d 1366 (J.P.M.L. 2006)....7

*J.M. v. Red Roof Inns, Inc.*,
2024 WL 532336 (E.D. Cal. Jan. 24, 2024) ....18

*Kane v. Unison Agreement Corp.*,
No. 1:26-cv-01444 (D. Colo. Aug. 20, 2026), Dkt. No. 30 ....5

*La. Power & Light Co. v. City of Thibodaux*,
360 U.S. 25 (1959)....9

*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*,
543 F. Supp. 3d 1377 (J.P.M.L. 2021)....6

*Philipp v. Fed. Republic of Germany*,
436 F. Supp. 3d 61 (D.D.C. 2020) ....13

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Liab. Litig.*,
568 F. Supp. 3d 1408 (J.P.M.L. 2021)....6

*Portnoy v. Zenith Lab'ys*,
1987 WL 10236 (D.D.C. Apr. 21, 1987) ....8

*Quinn v. JPMorgan Chase Bank, N.A.*,
2020 WL 3472448 (S.D.N.Y. June 24, 2020) ....15, 16

*Santaniello v. Unison Agreement Corp.*,
No. 2:26-cv-07117 (D.N.J. Aug. 13, 2026), Dkt. No. 23 ....5

*In re Schnuck Mkts., Inc., Customer Data Sec. Breach Litig.*,
978 F. Supp. 2d 1379 (J.P.M.L. 2013)....6

*In re T-Mobile Customer Data Sec. Breach Litig.*,
576 F. Supp. 3d 1373 (J.P.M.L. 2021)....18

**Statutes**

28 U.S.C. § 1407(a) ....4

## INTRODUCTION

In August, Unison moved this Court to "stay all proceedings in this action" pending a ruling on the JPML transfer motion. Mot. at 1. As part of that Motion, Unison asked the Court to extend Unison's September 4 deadline for responding to the complaint. *Id.* The Court opted not to grant such an extension. Consequently, Unison filed its motion to dismiss on September 4. ECF No. 33. As a result, the stay requested by the instant Motion is exceedingly narrow: to permit the parties to complete briefing of Unison's motion to dismiss, but to defer any ruling on that motion until after the JPML transfer motion is decided. Such a stay would both promote judicial efficiency and avoid the risk of inconsistent rulings. As to the former, it avoids a situation where this Court rules on the motion to dismiss, only to have a future MDL court duplicate that effort. And as to the latter, the stay avoids a scenario wherein this Court reaches conclusions of law that differ from or conflict with those reached by the MDL court—an outcome which would saddle Unison with conflicting legal obligations. Of course, if the JPML declines to centralize the Related Actions (including this one) into an MDL, very little is lost: the motion to dismiss will have been fully briefed, and this Court can rule at its convenience.

Rather than consider the logic of this approach, Evans's Opposition barely addresses the merits of Unison's stay request. Instead, it claims that this lawsuit (which Evans herself filed) is somehow delaying a pending foreclosure, baselessly accuses Unison of seeking delay, and cites Rule 11 in an apparent attempt to recast a routine and meritorious motion as improper. Stripped of this rhetoric, Evans raises two principal objections, and both fail.

***First***, Evans contends that her case is sufficiently distinct from the Related Actions and that a stay would serve no purpose—pointing to the absence of an arbitration clause in her Equity Sharing Agreement ("ESA") and the fact that her claims arise under D.C. law. Opposition, ECF

No. 26 (filed Sept. 9, 2026) ("Opp'n") at 5 (discussing state law claims), 11 (discussing arbitration clause). These arguments lack merit. To begin, even though Evans's ESA does not contain an arbitration clause, the enforceability of that clause (which is squarely at issue in the Related Actions) is directly relevant to Evans's lawsuit. That threshold enforceability question turns on a core issue central to this case: namely, whether the ESA is a "residential mortgage loan" under the Truth in Lending Act ("TILA"). Moreover, Evans's action is not unique in asserting state law claims. In fact, several of the Related Actions also bring state law claims—a fact that has not stopped four of those courts from staying or holding proceedings in abeyance pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML"). Nor would such a stay be without precedent: in materially similar circumstances, courts in the District of Columbia have previously issued stays pending transfer decisions by the JPML, and Evans's attempts to distinguish that precedent fail.

***Second***, Evans claims she will suffer prejudice from a stay because she faces an ongoing foreclosure action. But Evans has offered no evidence that a foreclosure sale is imminent, and her own Complaint—which was filed nearly two years after the foreclosure action she now invokes—never mentions it. More fundamentally, Evans's claimed urgency is belied by her own actions in this litigation, during which she has twice agreed to an extended briefing schedule. This includes an agreement to extend the briefing schedule for Unison's now-pending motion to dismiss, where Evans's opposition brief will not be due until November. These actions are inconsistent with an imminent foreclosure. In contrast, denying the brief stay requested by Unison creates a real risk of duplicative briefing and inconsistent rulings on identical threshold legal questions across seven jurisdictions. Evans's only response is that those harms must be "speculative" because they have not yet occurred, Opp'n 12, but that misses the point. An immediate stay is necessary because if

Unison is forced to wait until the harm materializes, it will be too late. Rather than needlessly force the parties (and the Court) to expend resources, the Court should temporarily pause this action while the JPML considers whether *Evans* should be transferred to another court for coordinated proceedings—a stay that is likely to last only a few weeks.

## ARGUMENT

### I. A Stay Will Serve Judicial Economy and Avoid Duplicative Proceedings Across Seven Related Actions.

Evans does not dispute that the seven Related Actions challenge the same Unison product under materially similar legal theories. Nor could she, given that all seven actions turn on the same core factual and legal questions, including:

- Whether Unison's ESA is an options contract or an undisclosed loan;
- Whether Unison has ever acted as a mortgage lender;
- Whether Unison's counterparties to the ESAs reserved an unencumbered right to remain in their homes;
- Whether the ESAs impose restrictions on homeowners' use and enjoyment of their homes;
- Whether Unison's counterparties would ever be required to return the initial payment they received from Unison;
- Whether Unison acted willfully in engaging in any of the alleged wrongful acts;
- Whether Unison's marketing and disclosures adequately convey the product's cost and structure;
- Whether Unison's conduct in connection with the ESAs violates consumer protection and/or lending laws;
- Whether the ESAs are designed to guarantee Unison's profit at homeowners' expense; and
- Whether applicable statutes of limitations bar any of the plaintiffs' claims.

And while Evans objects that these overlapping issues would not be dispositive under D.C. law, Opp'n 12, she does not and cannot deny that resolution of these questions will turn on the same core set of facts and require substantially similar legal analysis. Because the Related Actions share common questions of law and fact, Unison moved to transfer these actions to the JPML. *See* Notice of Filing of Mot. for Transfer, ECF No. 19 (filed Aug. 14, 2026); Decl. of David S. Yellin ("Yellin Decl.") ¶ 8, *In re Unison Litig*, MDL No. 3201 (J.P.M.L. Sept. 8, 2026), Dkt. No. 19-5 ("[T]he operative facts are similar across the related actions.").

Evans does not meaningfully dispute that the questions raised above (and likely many others) are common across the Related Actions. Instead, she argues that a stay is improper because the Related Actions (including her case) are not all exactly the same since they involve different parties and state laws. Opp'n 8–9, 11. But the standard for transfer under Section 1407 is not that the Related Actions be identical. Such a standard would never be satisfied. Rather, Section 1407 provides that transfer and centralization are appropriate when "common questions of fact" and law exist. 28 U.S.C. § 1407(a). That is the case here.

Moreover, the supposedly unique attributes of Evans's action are not, in fact, unique. While Evans's ESA does not contain an arbitration clause, the question of arbitrability affects issues (such as the definition of "mortgage loan" under TILA) that are directly relevant to Evans's action. Similarly, Evans's case is not alone in alleging state law claims: in fact, at least five of the Related Actions (not including Evans's Complaint) allege claims arising under state law (including under New York, Colorado, New Jersey, Massachusetts, Maryland, and Missouri law).[1] The presence of

[1] *See* Am. Compl., *Coffin v. Unison Agreement Corp.*, No. 1:26-cv-01587 (E.D.N.Y. May 11, 2026), Dkt. No. 13 (alleging violations of New York consumer-protection and mortgage-lending statutes); Am. Compl., *Kane v. Unison Agreement Corp.*, No. 1:26-cv-01444 (D. Colo. June 8, 2026), Dkt. No. 22 (alleging violations of Colorado equivalents); Compl., *Santaniello v. Unison Agreement Corp.*, No. 2:26-cv-07117 (D.N.J. June 15, 2026), Dkt. No. 1 (alleging violations of

state law claims does not render an MDL improper, because "common questions" of fact and law can still be shared among the coordinated cases (as is the case here). Nor does this fact undermine the need for a stay—it would be inefficient for this Court to resolve numerous factual and legal questions only to have another court duplicating efforts. Several of the courts overseeing the Related Actions have already recognized as much, issuing temporary stays or otherwise holding the actions in abeyance while the JPML considers the pending MDL Motion.[2] Evans offers no compelling basis for this Court to be an outlier by refusing to temporarily stay proceedings.[3]

Evans further contends that the Related Actions "do not include any District of Columbia residents" and will not "address any issues under District of Columbia law." Opp'n 5. But that

---

New Jersey equivalents); Compl., *Cuvellier v. Unison Agreement Corp.*, No. 3:26-cv-30126 (D. Mass. Aug. 5, 2026), Dkt. No. 1 (alleging violations of Massachusetts equivalents); Compl., *Francischetti v. Unison Agreement Corp.*, No. 1:26-cv-03341 (D. Md. Aug. 21, 2026), Dkt. No. 2 (alleging violations of Maryland equivalents); *GreatHouse v. Unison Agreement Corp.*, No. 4:26-cv-00771 (W.D. Mo. Sept. 4, 2026), Dkt. No. 1 (alleging violations of Missouri equivalents). After the MDL Motion was filed, Unison filed Notices of Related Cases for *Francischetti* and *GreatHouse*. *See In re Unison "HomeOwner Agreement" Equity Option Contract, Mktg., & Sales Pracs. Litig.* ("*In re Unison Litig.*"), MDL No. 3201 (J.P.M.L. Sept. 8, 2026), Dkt. Nos. 7 (for *Francischetti*), 17 (for *GreatHouse*).

[2] *See* Minute Order, *Kane*, No. 1:26-cv-01444 (D. Colo. Aug. 20, 2026), Dkt. No. 30 (staying all proceedings pending JPML ruling); Order entering Joint Proposed Briefing Schedule, *Coffin*, No. 1:26-cv-01587 (E.D.N.Y. Aug. 10, 2026), Dkt. No. 36 (holding briefing in abeyance pending JPML decision, with court approval); Text Order, *Santaniello*, No. 2:26-cv-07117 (D.N.J. Aug. 13, 2026), Dkt. No. 23 (granting defendants' request to stay proceedings pending JPML resolution); Electronic Order entering Stipulation & Order, *Cuvellier*, No. 3:26-cv-30126 (D. Mass. Aug. 27, 2026), Dkt. No. 15 (extending response deadline to sixty days after the JPML's decision on the MDL Motion).

[3] Evans notes that the other district courts overseeing Related Actions entered *unopposed* stays. Opp'n 5–6. But the plaintiffs' willingness to consent in those cases reinforces, rather than undermines, the reasonableness of a short pause while the JPML acts. Evans's apparent belief that she somehow suffers any more prejudice than the plaintiffs in the other Related Actions from a temporary stay is baseless. Evans also argues that the stays in the Related Actions are "contingent on the JPML hearing moving forward on September 24, 2026." Opp'n 6. But Evans overstates the significance of those provisions. The plaintiffs in *Kane* and *Coffin* merely "reserve[d] the right to oppose the stay" if the MDL Motion is not heard at the September 24 session. Unopposed Mot. to Stay at 5, *Kane*, No. 1:26-cv-01444 (D. Colo. Aug. 11, 2026), Dkt. No. 26; Joint Status Report ¶ 10, *Coffin*, No. 1:26-cv-01587 (E.D.N.Y. Aug. 7, 2026), Dkt. No. 34.

argument misapprehends the basis for a stay. The common questions that justify coordinated treatment are legal *and* factual, including factual questions regarding how the ESAs' financial mechanisms operate, what Unison disclosed to homeowners, and the ESAs' impact on homeowners' rights to use their homes. These questions are shared across the Related Actions, regardless of which state's consumer-protection statute ultimately governs. If this Court and another court independently develop the factual record on those issues and reach different conclusions about the nature of the same product, the result is precisely the kind of inconsistency that a stay is designed to prevent.

Despite Evans's argument to the contrary, Opp'n 11, the JPML also routinely centralizes actions involving different state laws, different plaintiffs, and a mix of individual and class actions where the core factual and legal questions overlap. *See generally* ECF No. 19-2, at 11–12 (listing JPML decisions consolidating cases with state law claims); *see, e.g.*, *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Liab. Litig.*, 568 F. Supp. 3d 1408, 1410 (J.P.M.L. 2021) (centralizing actions across five districts, including putative consumer class actions asserting "overlapping claims for violations of state consumer protection statutes" alongside approximately thirty individual personal injury actions); *In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2021) (centralizing ten individual actions and seven "putative statewide classes" across eight districts, all asserting claims under various state consumer-protection statutes). Equally unavailing is Evans's argument that a stay should not be put in place as it is "no means certain" that the JPML will consolidate the Related Actions "given the relatively small number of pending cases against Unison." Opp'n 2. The JPML has created MDLs with even fewer actions. *See, e.g.*, *In re Schnuck Mkts., Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 & n.1 (J.P.M.L. 2013) (consolidating four actions

and noting the existence of one potential tag-along action); *In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (consolidating three actions). To the degree that Evans believes that "[w]here only a minimal number of actions are involved, the proponent of centralization bears a heavier burden," Opp'n 5 (quoting *In re Enhanced Recovery Co., LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 363 F. Supp. 3d 1375, 1377 (J.P.M.L. 2019)), this is a question on the merits of centralization for the JPML to decide.

The inefficiency of Evans's preferred path forward is already evident. For example, concurrent with filing her opposition brief to this stay motion, Evans presented substantially similar arguments to the JPML in an opposition to the transfer motion. *See* Pl. Lilly V. Evans's Opp'n to Defs.' Mot. to Transfer at 5–8, *In re Unison Litig.*, MDL No. 3201 (J.P.M.L. Sept. 8, 2026), Dkt. No. 20 ("Evans JPML Opp'n") (arguing that Evans "never agreed to arbitration, does not seek class certification, and cannot participate in the putative statewide classes pending elsewhere"); Pls.' Joint Opp'n to Defs.' Mot. for Transfer at 7–18, *In re Unison Litig*, MDL No. 3201 (J.P.M.L. Sept. 8, 2026), Dkt. No. 19 (arguing that informal coordination is sufficient, that the cases present no common factual questions, and that there is no risk of inconsistent rulings). Evans's counsel has also presented her foreclosure-prejudice argument directly to the JPML. *See* Yellin Decl. ¶ 7 ("Ms. Evans is currently defending a foreclosure action" and "[t]he Unison Deed of Trust is preventing Ms. Evans from negotiating a resolution to the foreclosure that would allow her to keep her home."); Evans JPML Opp'n 9 (same). The JPML will weigh these arguments in deciding whether to transfer Evans's case. This reinforces the reasonableness of a temporary stay: the JPML will, in short order, resolve whether these actions should be centralized. Once it has done so, Unison has committed to filing regular joint status reports that will enable the Court to

determine next steps and modify the stay as necessary. This is an efficient, reasonable way forward for all involved.

## II. D.C. Courts Have Granted Stays Pending JPML Transfer Decisions, and Evans's Argument to the Contrary Fails.

Faced with authority showing that courts in this District regularly grant stays pending JPML transfer decisions, Evans tries to distinguish and minimize these cases, but fails. She dismisses *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37 (D.D.C. 1999), and *Portnoy v. Zenith Lab'ys*, 1987 WL 10236 (D.D.C. Apr. 21, 1987), as "old" decisions that may not "comport with more recent JPML precedent or, indeed, the rulings of this Court." Opp'n 14. But these decisions remain good law, and the authorities Evans offers in their place—*In re Dish Wireless L.L.C. Commc'n Towers Contract Litig.*, 2026 WL 1659414 (J.P.M.L. June 4, 2026), and *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376 (J.P.M.L. 2011)—are inapposite. In fact, the authorities cited by Evans are JPML decisions addressing whether to centralize cases, not whether a district court should stay proceedings while the JPML decides that question.[4] Evans also ignores recent decisions by courts in this District that have granted opposed stays pending JPML decisions. *See, e.g.*, Def.'s Mot. to Stay Pending Decision by JPML at 5, *Bell v. KFC Corp.*, No. 1:07-cv-01016, 2007 WL 4459720, at *4 (D.D.C. Aug. 23, 2007) (seeking a stay to "avoid duplicative motions and discovery . . . [and] the possibility of inconsistent rulings across various jurisdictions"); Minute Order, *Bell v. KFC Corp.*, No. 1:07-cv-01016 (D.D.C. Sept. 12, 2007) ("*Bell* Order") (granting stay over opposition); Def. SAIC's

[4] Evans also argues that "[t]he JPML may well deny the petition," noting a "nearly 40%" denial rate. Opp'n 12 (quoting *Quinn v. JPMorgan Chase Bank, N.A.*, 2020 WL 3472448, at *1 (S.D.N.Y. June 24, 2020)). But regardless of whether the JPML ultimately grants or denies transfer, the reasons for a stay exist now. Multiple courts are simultaneously considering the same threshold legal questions about the same product, and a stay pending the JPML's decision avoids the risk of duplicative rulings in the meantime.

Mot. to Stay Proceedings Pending a Decision by JPML at 4, *Gaffney v. Tricare Mgmt. Activity*, No. 1:11-cv-01800, 2012 WL 1580700, at *3 (D.D.C. Mar. 9, 2012) (seeking a stay to "further judicial economy and eliminate the potential for conflicting pretrial rulings") (citation omitted); Order at 2, *Gaffney v. Tricare Mgmt. Activity*, No. 1:11-cv-01800 (D.D.C. Apr. 24, 2012), Dkt. No. 31 ("*Gaffney* Order") (granting stay over opposition). Nor should Evans prevail based on her argument that some of these recent cases were "tag-along actions." Opp'n 14. This is because the entry of stays pending a motion before the JPML is not—and has never been—limited to tag-along actions. *See, e.g.*, *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 44 n.6 (D.D.C. 2017); *Gaffney* Order; *Bell* Order.

Evans further invokes this Court's Memorandum Opinion, ECF No. 22 (filed Aug. 14, 2026) ("Mem. Op."), denying Unison's motion to stay this action pending the resolution of *National Association of Consumer Advocates, Inc. v. Unison Agreement Corp.* ("*NACA*"), No. 2026-CAB-000955 (D.C. Super. Ct.) ("Abstention Motion"). Evans argues that because the Court denied the Abstention Motion, the same result should follow here. Opp'n 11. But Evans conflates the standard for this stay request with the fundamentally different standards that governed the relief requested in the Abstention Motion. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). As this Court explained, *Colorado River* abstention permits a federal court to defer to a parallel *state* proceeding only in "exceptional" circumstances, subject to an "unflagging obligation" to exercise jurisdiction that is "heavily weighted in favor of the exercise of jurisdiction." Mem. Op. 3, 5, 8 (quoting *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 552–53 (D.C. Cir. 2019), and citing *Colo. River*, 424 U.S. at 813, 817–18). Meanwhile, *Thibodaux* abstention is a "narrow doctrine" that permits a stay only where a case turns on an "unclear" state statute "of vital concern

to the government of a State" and implicates questions of "sovereign prerogative." Mem. Op. 9–10 (citing *Thibodaux*, 360 U.S. at 28).

Those heightened standards have no application here. In evaluating Unison's stay motion, this Court applies a more flexible test: it need only "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation omitted). That inquiry is a more permissive standard than *Colorado River*'s "exceptional circumstances" test or *Thibodaux*'s "sovereign prerogative" requirement. *See Colorado River*, 424 U.S. at 817 (differentiating proceedings that are "between state and federal courts"—where the "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court—from proceedings "between federal district courts . . . [where] the general principle is to avoid duplicative litigation").[5]

To be sure, the Abstention Motion also invoked this Court's inherent authority. But the circumstances justifying this Court's stay authority have materially changed. When the Abstention Motion was filed, this Court was asked to stay this action in favor of a single parallel case in D.C. Superior Court. Since the Abstention Motion, five additional federal lawsuits have been filed across five districts, and the MDL Motion is pending with a hearing expected soon. The risk of duplicative proceedings and inconsistent rulings is now far more acute—which is precisely why many of the Related Actions have been suspended pending the JPML's resolution of the MDL

[5] Nor does *Edge*, 927 F.3d at 552, support Evans's argument that this Court has an "unflagging obligation . . . to exercise jurisdiction." *Edge* concerned a stay under *Colorado River* and is thus inapplicable here, for the reasons explained above. Moreover, the *Edge* Court itself noted "that the principle of avoiding duplicative litigation does not generally govern parallel federal-state litigation but [it] *does govern parallel federal-federal litigation*" like the circumstances here. *Id.* at 555 (emphasis added).

Motion. The type of stay requested here is also fundamentally different from the relief requested in the Abstention Motion. As this Court explained, granting the Abstention Motion would have frozen Evans's case without any certainty as to when answers to the dispositive legal questions at issue would be provided. Mem. Op. at 11. But this motion is altogether different—it seeks a brief pause while the JPML decides where these cases should be litigated. If the JPML were to grant the MDL Motion, Evans's case would continue before the transferee court in a coordinated proceeding. Evans would not lose her day in court; she would simply spend it in a forum designed to resolve the common questions efficiently. And if the JPML were to deny transfer, the temporary stay would lift, and this case would proceed apace with Unison's motion to dismiss being fully briefed for the Court's consideration.

Because the relevant judicial economy concerns are now more pronounced and the nature of the relief sought here is fundamentally different, the Court should exercise its discretion and issue the requested stay.[6]

---

[6] Evans's argument that Unison is "abandoning arguments that the D.C. Superior Court was the appropriate jurisdiction to decide important issues" is without support. Opp'n 4. Both the Abstention Motion and this request were driven by judicial economy concerns. When the first *Evans* stay motion was filed on April 1, 2026, only one other federal case that Unison is now seeking to consolidate was pending—*Coffin v. Unison Agreement Corp.*, No. 1:26-cv-01587 (E.D.N.Y. filed Mar. 17, 2026)—and the D.C. Superior Court's expertise in D.C. law supported resolving the threshold questions in that forum first. Since then, five additional federal actions have been filed across five new districts, shifting the judicial-economy calculus strongly in favor of coordinated federal resolution. *See Kane v. Unison Agreement Corp.*, No. 1:26-cv-01444 (D. Colo. filed Apr. 6, 2026); *Santaniello v. Unison Agreement Corp.*, No. 2:26-cv-07117 (D.N.J. filed June 15, 2026); *Cuvellier v. Unison Agreement Corp.*, No. 3:26-cv-30126 (D. Mass. filed Aug. 5, 2026); *Francischetti v. Unison Agreement Corp.*, No. 1:26-cv-03341 (D. Md. filed Aug. 21, 2026); *GreatHouse v. Unison Agreement Corp.*, No. 4:26-cv-00771 (W.D. Mo. filed Sept. 4, 2026). Evans is also off base in declaring that Unison's filings in *NACA* reflect a "dilatory pattern in which Unison has alternatively tried to leverage the existence of each action as a reason to stay the other." Opp'n 4 n.2. That characterization misrepresents both the nature and the sequence of those filings. Unison's motion to compel arbitration in *NACA* was filed on May 6, 2026, three months before the MDL Motion existed. Because the plaintiff in *NACA* purports to represent homeowners who agreed to arbitration, the motion to compel arbitration seeks to enforce that agreement. *See* Defs.'

## III. A Brief Stay Will Not Prejudice Evans, While the Absence of a Stay Will Prejudice Unison.

### *A. Evans Will Not Be Prejudiced by a Brief Stay.*

Evans's prejudice argument rests on her assertion that she is "currently defending a foreclosure action" and that "with each passing month, Ms. Evans suffers increasing danger that she will lose her home." Opp'n 7–8. More specifically, Evans appears to suggest that the ESA she entered into with Unison is somehow preventing her from refinancing the existing loans on her home, which in turn, according to Evans, is a necessary step to resolving the *Truist Bank* foreclosure. *Id.* But in the more than two years since that foreclosure action was filed, no foreclosure sale has been scheduled, no answer has been filed (Evans's answer deadline has been extended at every status hearing since July 2024), and the case has never progressed beyond status hearings and a mediation. *See Truist Bank ex rel. SunTrust Bank v. Evans*, No. 2024-CAB-001465 (D.C. Super. Ct. filed Mar. 7, 2024). Evans's foreclosure case has been continued repeatedly—including at Evans's own request, *see* Consent Mot. to Continue Remote Mediation Session, *Truist Bank*, No. 2024-CAB-001465 (D.C. Super. Ct. June 27, 2025)—and a mediation session held on August 27, 2025, was reported as "successful." That was more than a year ago.

The most recent hearing, on May 22, 2026, continued the case by consent to October 1, 2026. During the pendency of the foreclosure action, Evans's counsel appears to have pursued (or actively be pursuing) a reverse mortgage application, loss mitigation, and D.C. Homeowner Assistance Fund relief. *See* Minutes, *Truist Bank*, No. 2024-CAB-001465 (D.C. Super. Ct. July

Mot. to Compel Arbitration & Stay Proceedings, *NACA*, No. 2026-CAB-000955 (D.C. Super. Ct. May 6, 2026). Unison's subsequent motion to stay *NACA* pending the JPML's decision was filed on August 21, 2026, the same day as this stay motion. Defs.' Mot. to Stay Proceedings Pending JPML at 7 n.1, *NACA*, No. 2026-CAB-000955 (D.C. Super. Ct. Aug. 21, 2026). There is nothing inconsistent about seeking coordinated treatment across all forums to reduce the risk of duplicative proceedings and inconsistent rulings pending the MDL Motion.

12, 2024); Minutes, *id.* (Jan. 16, 2025); Minutes, *id.* (Apr. 18, 2025). Yet Evans has offered no evidence that any of these efforts have been impeded by her ESA with Unison, or that a stay (of any length) in this case would affect the outcome of those ongoing efforts. Evans's prejudice argument thus amounts to nothing more than arguing that this stay would "delay [her] day in court," which is insufficient. *See Feld Ent., Inc. v. ASPCA*, 523 F. Supp. 2d 1, 4 (D.D.C. 2007) (granting stay where non-movant's brief "does nothing more than recite further allegations" "[r]ather than identifying actual harm potentially caused by the stay").

This Court's decision in *Philipp v. Federal Republic of Germany*, 436 F. Supp. 3d 61, 69 (D.D.C. 2020), further undermines Evans's claimed prejudice. In that case, the Court considered a motion for stay pending petition for a writ of certiorari. There, as here, the plaintiffs objected to the defendant's stay request and claimed prejudice based "on delay that predate[d] and [was] unrelated to the filing of the [cert] petition" at issue. *Id.* The *Philipp* plaintiffs argued that their case had "been pending in court since 2015" and that, even before litigation, the defendants had "strung Plaintiffs along." *Id.* This Court rejected that argument, holding that prejudice claims grounded in pre-existing delay do "not demonstrate harm attributable to a stay." *Id.* The same holds true here. Just like the plaintiffs in *Philipp*, Evans objects that "since the Complaint was filed in February 2026, this case has seen no appreciable forward movement." Opp'n 1. But as in *Philipp*, the supposed "delay" predates this Motion and does not "demonstrate harm attributable to a stay."

Likewise, Evans's own actions (and that of her counsel) undercut her claim that a short stay will cause prejudice. To begin, and as noted above, the *Truist Bank* foreclosure action was filed in 2024, nearly two years before Evans filed suit against Unison. Yet Evans's own Complaint makes no mention of any pending foreclosure proceeding. Nor did Evans raise the foreclosure in

her opposition to Unison's earlier request for a stay. But in her Opposition to this stay motion, the foreclosure proceeding is now presented as a looming emergency, Opp'n 8–9, suggesting it is less a genuine emergency than an argument of convenience.

But even setting aside Evans's decision not to raise the foreclosure proceeding earlier as a source of prejudice, her claimed urgency is also at odds with the strategy that she and her counsel have pursued in this case. For example, shortly after the Complaint in this case was served, the parties *jointly* moved the D.C. Superior Court to extend the briefing schedule, including a 60-day extension of time for Evans to file her opposition to any motion to dismiss. Joint Consent Mot. ¶ 4 (filed Mar. 9, 2026). After the case was removed to federal court, the parties asked this Court to adopt the same lengthened briefing schedule—which, again, included a 60-day opposition period for Evans. *See* Joint Mot. for Extension of Time, ECF No. 7 (filed Mar. 25, 2026) ¶¶ 3, 6–7. If Evans's foreclosure situation were truly as pressing as her Opposition now claims, she could have insisted on an expedited briefing schedule, not an *extended* one.

The fact that the parties jointly agreed to the current, operative briefing schedule also undermines Evans's accusation that Unison is somehow engaging in an "obvious delaying tactic." Opp'n 13 (quoting *In re Duke Energy Corp. Sec. Litig.*, 2002 WL 1933798, at *1 (S.D.N.Y. Aug. 20, 2002)).[7] In service of that assertion, Evans misleadingly implies that Unison committed to filing a responsive pleading and then reneged by seeking a stay instead. Opp'n 3. But this is false, and Evans can cite no such commitment (because none exists). The parties' Joint Motion for Extension of Time simply asked to extend Defendants' deadline to respond to the Complaint and

[7] *Duke Energy* is also inapposite. There, the defendant had already "lost their motion to transfer" consolidated cases and then filed another transfer request with the JPML. 2002 WL 1933798, at *1. The court found that the second JPML filing was made "for no better reason than as an obvious delaying tactic." *Id.* Here, Unison's *first* MDL Motion is being considered by the JPML, so there is zero evidence for Evans's naked assertion that Defendants are engaging in dilatory behavior.

extend Evans's time to respond to Defendants' motion to dismiss. ECF No. 7 at ¶¶ 6–7. It did not commit Unison to forgo other available pretrial motions, including the Abstention Motion that was ultimately filed on April 1, 2026. This Court appears to have shared that understanding: on May 4, it stayed Defendants' deadline to respond to the Complaint pending resolution of that Abstention Motion—an apparent recognition that Unison was within its rights to seek resolution of that motion before responding to Evans's Complaint.

Evans also warns that if the September 24 JPML hearing is not calendared, the next session is not until December 3. Opp'n 5, 8. But even if true, waiting an additional two months (or less) would not prejudice Evans given the posture of this case. No discovery has occurred, no scheduling order is in place, and the motion to dismiss will be fully briefed for the Court's consideration if and when the stay is lifted. Moreover, Defendants have committed to filing a joint status report within seven days of the JPML's ruling, giving this Court a concrete, near-term checkpoint at which it could adjust the scope of the stay as needed. Defs.' Mot. to Stay 10, ECF No. 25; *contra Belize*, 668 F.3d at 732 (disapproving a stay that did not "include[] [any] provision for status updates or further review").

Finally, Evans's continued reliance on out-of-circuit authorities, including *Quinn*, *Blackmore v. Smitty's Supply, Inc.*, 451 F. Supp. 3d 1003 (N.D. Iowa 2020), and *In re Healthextras Ins. Mktg. & Sales Pracs. Litig.*, 24 F. Supp. 3d 1376 (J.P.M.L. 2014), is misplaced. Opp'n 9, 11. That trio of cases is distinguishable.

In *Quinn*, the court noted that stays pending JPML decisions are "customary," but it denied a stay in that case specifically because of the combination of five factors: (1) "the economic pressures brought about by [the] pandemic"; (2) the fact that "the JPML has not yet even calendared the petition for argument"; (3) the fact that "the JPML may well deny the petition"; (4)

the likelihood that the constituent cases will be aided by forward progress "even assuming that the petition is granted"; and (5) the unlikelihood that any party will "materially suffer[] from the fact that some initial motion practice or discovery has transpired." 2020 WL 3472448, at *1–2. These factors do not counsel denying a stay here, for multiple independent reasons. First, this case lacks the same degree of "economic pressures" at issue in *Quinn.* In *Quinn*, the prejudice from delay was self-evident from the face of the pleading. The complaint in that case alleged that it was "critical" for small businesses to obtain emergency PPP loans to survive the COVID-19 pandemic, and that businesses nationwide had been "forced by law to overhaul their business models, scale back their business dramatically, or shutter." Compl. ¶¶ 6, 12, 26, *Quinn*, No. 20-cv-4144 (S.D.N.Y. May 29, 2020), Dkt. No. 1. Businesses were at risk in real time during the pandemic. Not so here. Evans's claims concern the characterization of a financial product she entered into ***seven years ago***. *See* Unison Defs.' Mot. to Dismiss 8–12, ECF No. 33 (filed Sept. 4, 2026). Needless to say, Evans's thirteenth-hour attack on an agreement she executed long ago is a far cry from the time-sensitive nature of the alleged prejudice at issue in *Quinn*. Second, it is unlikely that the Related Actions will benefit from *Evans* moving forward alone. Here, any potential transferee judge will already have extensive briefing from the parties' JPML submissions, the pending motion to dismiss in this case, and the fully briefed motion to compel arbitration in *NACA*. There is nothing to be gained by putting *Evans* on a faster track than the other Related Actions. Third, it is highly likely that Unison will materially suffer (and has already materially suffered) from the lack of a stay. Several parties, including Unison, are actively expending resources to address substantially similar arguments before both the JPML and this Court, which also risks inconsistent rulings on the same key factual and legal questions. *See supra* Section I; *infra* Section III(B).

*Blackmore* does not help Evans either. In that case, there were no "motions currently pending" that would have "create[d] a risk of inconsistent rulings" or implicated "judicial-economy concerns" "if a stay [were] not granted." 451 F. Supp. 3d at 1007. But the pending motion to dismiss in this case creates that risk. Moreover, Evans's use of *Quinn* and *Blackmore* to argue that "[t]here is ample authority for courts denying a stay, even when a JPML hearing is relatively soon," Opp'n 9, is unavailing. The courts in those cases denied stays for the aforementioned reasons that are inapplicable here.

Finally, *Healthextras* was a JPML transfer denial—not a stay ruling. 24 F. Supp. 3d at 1377. There, although the actions shared "certain factual issues regarding the sales and marketing of disability insurance policies," the JPML found "the key issue in all cases is legal in nature—specifically, whether these policies were issued to an eligible group or association, as defined by the laws and regulations of the relevant state." *Id.* But here, the shared factual questions are key to adjudicating the Related Actions. The resolution of common factual questions—including how ESAs' financial mechanisms operate and what Unison disclosed to homeowners—will determine whether and how individual state statutes apply to the ESAs.

Given the timeline of the foreclosure proceeding and the litigation strategy Evans has adopted thus far, she cannot now credibly argue that a brief stay will create intolerable prejudice. Taken together with the increased likelihood that the JPML proceedings will lead to duplicative and/or inconsistent rulings on overlapping factual and legal issues, the Court should grant Unison's modest stay request and direct the parties to file a joint status report seven days after the JPML renders a decision on the MDL Motion.

***B. The Absence of a Stay Will Prejudice Unison and Waste Judicial Resources.***

Unlike Evans, Unison would face concrete prejudice in the absence of a stay. Evans dismisses the risk of inconsistent rulings as "speculative" and characterizes duplicative motions

practice as a "burden on counsel" that "does not constitute the requisite harm." Opp'n 10, 12. But she is mistaken. A harm is not speculative merely because it has yet to occur—after all, the whole point of a stay is to avoid inflicting future injuries on parties like Unison. Indeed, the alternative would be unworkable: a defendant could seek a stay only *after* the harm has occurred (i.e., a court has expended resources to decide a duplicative motion, or multiple courts have issued inconsistent rulings). At that point, the harm and prejudice cannot be undone.[8]

And here, there can be little doubt that rushing these proceedings would prejudice Unison, especially given the pendency of the MDL Motion (which has materially increased the likelihood of duplicative motion practice and/or inconsistent rulings). To take just one concrete example, Unison's motion to dismiss has now been filed. Many of the same threshold questions raised in that responsive pleading are also pending in the Related Actions. If these courts were to reach different conclusions on one or more of those arguments, Unison would face conflicting obligations and irreconcilable legal standards across jurisdictions. That is not simply a burden on counsel's convenience; it subjects Unison and the court system to needless inefficiency. *Contra J.M. v. Red Roof Inns, Inc.*, 2024 WL 532336, at *3 (E.D. Cal. Jan. 24, 2024); *see In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021) (centralizing actions to "eliminate duplicative discovery[,] prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel, and the judiciary").

[8] Evans also criticizes Unison for filing this Motion "only a week after this Court denied" the Abstention Motion. Opp'n 12. The MDL Motion was filed with the JPML on August 13, 2026, the day before this Court denied the Abstention Motion. *See* ECF No. 19; Mem. Op., ECF No. 22. The MDL Motion—and the proliferation of federal cases that prompted it—gave rise to the judicial economy concerns underlying this stay request. Evans's implicit suggestion that Unison should have waited longer before seeking relief makes no sense. The very point of a stay is to act before multiple courts issue conflicting rulings on the same product while the MDL Motion is pending. Waiting for harm to materialize would defeat the purpose of the relief Unison seeks.

Finally, Evans suggests that informal coordination can substitute for MDL consolidation. Opp'n 13–14. That is a question for the JPML to resolve on the merits of consolidation and has no bearing on whether a stay is warranted while the JPML makes its decision. If the JPML agrees that informal coordination is sufficient, it will deny the MDL Motion, the stay will lift, and this case will proceed. Even if the parties could informally coordinate, that would not address the more significant concern: duplicative motions practice on threshold legal questions—including the characterization of the ESA and the applicability of TILA—across multiple courts construing the same contract simultaneously. No amount of coordination eliminates the need to brief and argue the same issues in parallel forums, the risk of conflicting rulings, or the resulting drain on party and judicial resources. Four federal courts have already reached the same conclusion, staying or holding proceedings in abeyance pending the JPML's ruling. *See* Defs.' Mot. to Stay 4–5, ECF No. 25. This Court does not need to break new ground by forcing the parties to litigate a case that may be centralized for coordinated proceedings before a different federal court.

## CONCLUSION

For the foregoing reasons, the Unison Defendants respectfully request that the Court (1) order the parties to complete briefing of the motion to dismiss; (2) defer ruling on that motion until after the JPML rules on the MDL Motion; (3) stay all other proceedings in this action until the JPML issues a ruling; and (4) direct the parties to file a joint status report within seven days of the JPML's ruling, advising the Court of the outcome and proposing next steps. In addition, now that the stay motion is fully briefed, the Unison Defendants respectfully request expedited resolution of this motion.[9]

[9] Unison's request for an accelerated briefing schedule on this stay motion is now moot. *See* Defs.' Mot. to Stay 9, ECF No. 25. However, Unison's request for expedited consideration remains

Dated: September 11, 2026

Respectfully submitted,

*/s/ Raymond P. Tolentino*

Raymond P. Tolentino (D.C. Bar #1028781)
Michelle L. Rogers (D.C. Bar #498625)
Menno Goedman (D.C. Bar #888325119)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, D.C. 20004
Phone: 202-842-7800
Fax: 202-842-7899
Email: rtolentino@cooley.com
Email: mrogers@cooley.com
Email: mgoedman@cooley.com

*Counsel for Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Odin New Horizon Real Estate Fund, L.P., Odin New Horizon General Partner LLC, and Ismael Casas, Jr.*

---

pressing. A prompt ruling on this stay motion would allow the Court to preserve the status quo before the JPML acts on the MDL Motion.